## Case Analysis on Differences

| Element | *Lee vs. EUSA Pharma (2024 WL 250064)* | *Warner v. Gilbarco / Vontier* | Why *EUSA* reasoning does not bar discovery in *Warner* |
|---|---|---|---|
| **Use of Investigation in Defense (Sword)** | Defendant did *not* rely on investigation in defense; privilege preserved. | Vontier affirmatively relied on its HR investigations in EEOC responses and its First Amended Complaint response, asserting "an investigation found no discrimination." | **Defendants cannot invoke internal investigations as both a sword and a shield**, using them to claim exoneration while concealing the underlying facts. Once a party relies on an investigation to defend against liability, it **waives privilege over the related materials.** (*Hearn v. Rhay, 68 F.R.D. 574, 581–82 (E.D. Wash. 1975)*). |
| **Outcome & Temporal Proximity** | Plaintiff (Lee) was terminated May 20 2022, a week after investigation ended. Court viewed it as a pre-suit legal inquiry by outside counsel, not a retaliatory act. | HR investigations (Gibson #22-119; Martorell #23-005) concluded ≈ Mar 10 2023; Plaintiff was terminated Mar 30 2023 (20 days later). **Defendants used the finding "no discrimination" to justify termination.** | EUSA involved an outside-counsel legal review preceding suit; **Warner involves an internal HR investigation used as pretext for termination**, triggering privilege waiver under the at-issue doctrine. |
| **Triggering Event** | Internal complaint investigated by outside counsel before any EEOC charge or litigation. | Internal "HR compliance" investigations began Oct 2022 and continued through Mar 2023. During retaliatory conduct and preceding EEOC filings (Feb & Apr 2023). | EUSA was a neutral, pre-litigation inquiry; **Warner was a pretextual retaliation investigation intertwined with EEOC activity and termination.** |
| **Type of Counsel** | Outside Counsel (Jackson Lewis LLP) formally retained to conduct legal investigation. | In-house counsel and compliance staff (Gibson, Martorell, Hunt) conducted HR-style investigations as employees on payroll. | **Outside counsel acts with a clear legal-advice role**; in-house personnel acting as HR/compliance investigators perform business functions not protected by privilege. |
| **Role in Investigation** | Jackson Lewis planned and executed investigation, interviewed witnesses, and issued a legal report. | Gibson and Martorell collected HR facts and distributed reports internally to HR and management. | Gilbarco/Vontier investigators acted as HR functionaries, not legal advisors; privilege fails under EUSA's own standard. |
| **Attorney–Client Relationship** | Formal retainer and privileged billing records; limited distribution within legal team. | No retainer, no litigation hold; communications shared broadly with HR and operations. | Absence of formal attorney–client engagement = business purpose, not legal advice. |
| **Judicial Treatment** | **Court preserved privilege only for narrow attorney-opinion sections.** | Judge Patti directed parties to "read EUSA" to calibrate privilege; no finding that Gilbarco/Vontier HR work is protected. | **EUSA limits privilege to clear legal advice; here EUSA actually supports production of HR materials.** |
| **Investigation to Lawsuit Timeline** | Jackson Lewis (outside counsel) completed report May 13 2022; lawsuit filed May 26 2022 → clear separation between HR inquiry and litigation. | Internal HR Compliance investigations (Gibson #22-119; Martorell #23-005) ran Oct 2022 – Mar 2023, overlapping with EEOC charges (Feb–Apr 2023) and ongoing retaliation; lawsuit filed Sept 2024. | **EUSA had <1 month between report and suit; Warner had about 1.5 years gap.** These were ordinary business inquiries, not work product prepared "in anticipation of litigation." |