# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SOHYON WARNER,

        Plaintiff,

v.

GILBARCO, INC., GILBARCO, INC.
(d/b/a GILBARCO VEEDER-ROOT)
and VONTIER CORPORATION

        Defendants.

Case No. 24-cv-12333

Hon. Gershwin A. Drain
Mag. Judge Anthony P. Patti

---

Sohyon Warner
Plaintiff, *Pro Se*
2841 Lamplighter Lane
Bloomfield Hills, MI 48304
Sohyon.warner@gmail.com
248-210-5504

Richard W. Warren (P63123)
Lauren D. Harrington (P85545)
OGLETREE DEAKINS, PLLC
*Attorneys for Defendants*
34977 Woodward Avenue, Ste. 300
Birmingham, MI 48009
248-593-6400
richard.warren@ogletree.com
lauren.harrington@ogletree.com

---

# DEFENDANTS' MOTION TO COMPEL
# AND REQUEST FOR SANCTIONS

NOW COME, Defendants, Gilbarco Inc., Gilbarco, Inc., (d/b/a Gilbarco Veeder-Root) and Vontier Corporation (collectively "Defendants"), by and through their undersigned counsel, Ogletree, Deakins, Nash, Smoak & Stewart, PLLC, for their Motion to Compel and request for Sanctions.

Plaintiff, who has filed a number of discovery motions about various frivolous

and fabricated issues, has now made several admissions that she is withholding relevant, admissible and discoverable evidence. During Plaintiff's deposition, held November 25, 2025, Plaintiff admitted that she used generative AI, specifically ChatGPT, to upload case documents, draft filings and ask legal questions. (**Ex. 1**, Plaintiff's Dep., pg. 98:23-120:1). She also admitted, that despite this information being directly relevant to Defendants' Second Set of Interrogatories (**Ex. 2**) and Document Requests (**Ex. 3**), she withheld the information based on the work product doctrine.  Further, even though she has filed numerous motions of her own claiming that Defendant's privilege log was inadequate and therefore any privileges were waived, Plaintiff has never provided a privilege log of her own. (**Ex. 1**, Plaintiff's Dep., pg. 106:1-110:18). After repeatedly requesting Plaintiff to either produce the information and supplement her discovery responses or provide a privilege log, Plaintiff refused. (**Ex. 1**, Plaintiff's Dep., pg. 116:21-117:12).

Plaintiff has also refused to sign authorizations for the release of her medical records despite maintaining a claim for emotional distress damages. (**Ex. 1**, Plaintiff's Dep., pg.130:2-132:10). Naturally, any source of collateral emotional distress that is unrelated to her employment with Gilbarco or existed before her employment would be relevant, admissible and probative evidence that Plaintiff refuses to produce.

During Plaintiff's deposition on November 25, Defendants' counsel asked

Plaintiff to provide this information within seven days. (**Ex. 1**, Plaintiff's Dep., pg. 21:19-22:4; 119:16-120:1). When Defendants did not receive the requested information, on December 02, Defendants' counsel asked Plaintiff to meet and confer by video call to try and resolve the issue. (**Ex. 4**, December 2-4, 2025, Email Chain). Plaintiff refused to meet and confer. This represents a long-standing pattern of Plaintiff refusing to comply with the requirements of the Federal Rule of Civil Procedure and the Eastern District of Michigan's Local Rules. Plaintiff's failure to do so is particularly egregious given that the Magistrate Judge has very recently explained to Plaintiff the need to meet and confer before filing Motions.

On December 04, Defendants' counsel explained their position, in detail, and their intention of filing a motion to compel if Plaintiff did not comply. (**Ex.4**). Plaintiff continues to withhold this information, and will not produce a privilege log, leaving Defendants no choice but to involve the Court.

On December 4, 2025 concurrence was sought pursuant to Local Court Rule 7.1, but was not obtained. For the reasons set forth in the attached Brief, Defendants respectfully request that the Court enter an Order that:

1. Compels Plaintiff, within seven days, to produce all documents and information concerning her use of third-party AI tools in connection with this lawsuit, as requested in Defendants' discovery requests, including: all prompts/queries submitted; all documents, emails, text, or data uploaded or

input to any AI tool; all outputs/responses received; all account activity logs, usage histories, and exportable chat histories or archives reflecting any of the foregoing.

2. Overrules Plaintiff's attorney–client privilege and work-product objections to the AI materials, or alternatively, if the Court sustains any privilege or protection as to any item, require Plaintiff, within seven days, to serve a Rule 26(b)(5)(A)-compliant privilege log.

3. Compels Plaintiff, within seven days, to execute HIPAA-compliant medical authorizations for the medical and mental-health providers Plaintiff identified in her deposition.

4. Orders Plaintiff to bear Defendants' reasonable expenses, including attorneys' fees, incurred in bringing this Motion, pursuant to Rule 37(a)(5), as Plaintiff's refusals lack substantial justification, she has persistently flouted obligations under the Federal Rules of Civil Procedure and she has been engaged in gamesmanship requiring Defendants to expend significant effort to detect her failure to comply with her discovery obligations.

Respectfully submitted,

/s/Richard W. Warren
Richard W. Warren (P63123)
Lauren D. Harrington (P85545)
OGLETREE, DEAKINS, PLLC
*Attorneys for Defendants*
34977 Woodward Avenue, Suite 300
Birmingham, MI  48009
T: (248) 593-6400
richard.warren@ogletree.com
Dated: December 23, 2025          lauren.harrington@ogletree.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SOHYON WARNER,

               Plaintiff,               Case No. 24-cv-12333

v.

GILBARCO, INC., GILBARCO, INC.       Hon. Gershwin A. Drain
(d/b/a GILBARCO VEEDER-ROOT)    Mag. Judge Anthony P. Patti
and VONTIER CORPORATION

             Defendants.

---

Sohyon Warner
Plaintiff, *Pro Se*
2841 Lamplighter Lane
Bloomfield Hills, MI 48304
Sohyon.warner@gmail.com
248-210-5504

Richard W. Warren (P63123)
Lauren D. Harrington (P85545)
OGLETREE DEAKINS, PLLC
*Attorneys for Defendants*
34977 Woodward Avenue, Ste. 300
Birmingham, MI 48009
248-593-6400
richard.warren@ogletree.com
lauren.harrington@ogletree.com

---

# BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL AND <u>REQUEST FOR SANCTIONS</u>

## QUESTION(S) PRESENTED

1. Should the Court order Plaintiff to produce all documents and information concerning her use of third-party AI tools in connection with this lawsuit because it is not privileged or subject to the work product doctrine?

   **Defendants' answer: Yes.**

2. Should the Court order Plaintiff to provide a privilege log detailing any materials withheld on the basis of privilege or work product, to the extent the Court determines that any material is protected from disclosure?

   **Defendants' answer: Yes.**

3. Should the Court order Plaintiff to execute and provide Defendants with signed authorizations for the release of her medical records related to the emotional distress damages set forth in this lawsuit?

   **Defendants' answer: Yes.**

4. Should the Court grant sanctions pursuant to FRCP 37(a)(5) and award Defendants their attorney fees in connection with filing this motion, in light of the substantial motion practice Plaintiff has imposed?

   **Defendants' answer: Yes.**

## **CONTROLLING AND MOST APPROPRIATE AUTHORITY**

FRCP 26(b)(5)

FRCP 37(a)(5)

## I.   INTRODUCTION

This is a straightforward discovery motion driven by Plaintiff's categorical refusals and failure to comply with her obligations under the Federal Rules of Civil Procedure. It is yet another example of Plaintiff's abuse of the discovery process and actions requiring Defendant and the Court to expend resources controlling a *pro se* Plaintiff with absolutely no regard for the rules and requirements for litigating a matter in federal court. Plaintiff has admitted to extensive use of generative AI tools in this case. Her written queries almost certainly contain admissions and other relevant evidence that concern her allegations in this lawsuit. Yet, in written discovery, Plaintiff declined to produce any materials concerning her use of third-party AI tools to draft filings and otherwise assist her prosecution of this case, and she refused to answer interrogatories concerning the same.

Specifically, during Plaintiff's deposition, she admitted she used ChatGPT to draft filings; admitted she uploaded emails and other case-related materials to ChatGPT; admitted there are records of her prompts/queries and outputs; and further admitted she deleted some of those records. Production of that information is likely to reveal that Plaintiff uploaded documents to a third-party tool that may not have been produced in litigation but are relevant to the claims and defenses of the parties. Despite those admissions, Plaintiff continues to withhold all such materials and has not provided a privilege log.  This is particularly notable given that Plaintiff has filed

1

numerous motions claiming that: (a) Defendants' privilege log was deficient; and (b) Defendants' privilege log was not produced soon enough amounting to a waiver of all privilege assertions. By Plaintiff's own reasoning and logic, her own claims of privilege are long since waived.

Plaintiff also seeks emotional-distress damages but has refused to provide medical authorizations so that Defendants can obtain relevant medical and mental-health records. At her deposition, she expressly refused to sign authorizations limited to her identified providers.

Defendants request an order requiring Plaintiff to: (a) produce all third-party AI-related prompts, queries, uploads, outputs, and any related records; (b) overrule her privilege/work-product objections; (c) alternatively, if any claim is recognized, serve a privilege log that complies with Rule 26(b)(5)(A); (d) execute medical authorizations for the providers identified in her deposition (including, at minimum, her therapists and prescribing physicians) within seven days; and (e) pay Defendants' reasonable expenses associated with filing this motion.

## II.   RELEVANT BACKGROUND

On September 23, 2025, Defendants served targeted discovery seeking information and documents regarding Plaintiff's use of AI tools in connection with this litigation, including all prompts/queries, inputs/uploads (e.g., emails or other documents), and outputs/responses. Plaintiff refused across the board in her

responses to Defendants' Second Interrogatories and Second Requests for Production, asserting that these materials are "vague, overbroad, irrelevant, harassing, and **seeks information protected as work product**." (**Ex. 2**, Interrogatory Nos. 1-4, **Ex. 3**, RFP Nos. 3-4) (emphasis added).

At Plaintiff's deposition on November 25, 2025, Plaintiff admitted she used generative AI (ChatGPT) to help draft filings for this lawsuit (**Ex. 1**, Plaintiff's Dep., pg. 99:3-10); that she maintains a paid account (**Ex. 1**, Plaintiff's Dep., pg. 99:13-16); that she uploaded emails and materials to ChatGPT "many times" (**Ex. 1**, Plaintiff's Dep., pg. 113:10-15); that ChatGPT records reflect her prompts/queries and outputs (100:7-10, 104:1-6); that she has not produced any such records in discovery (**Ex. 1**, Plaintiff's Dep., pg.106:1-107:15); and that she even deleted some records from ChatGPT (**Ex. 1**, Plaintiff's Dep., pg. 100:11-20, 110:6-18). When asked to provide a privilege log for what she is withholding, Plaintiff declined. (**Ex. 4**).

Separately, for several months now, Defendants have asked Plaintiff to sign and return medical authorizations specific to the providers that have treated her for the emotional distress she alleges was the result of Defendants conduct. (**Ex. 1**, Plaintiff's Dep., pg.130:2-132:10, **Ex. 5** September 23-30 email chain). During Plaintiff's deposition, she disclosed that those treaters were Therapists Maria Yoo and Lemica Cox, and Dr. Shazia Qumar. (**Ex. 1**, Plaintiff's Dep., pg. 23:14-24:19).

However, when Defendants' counsel presented her with authorizations specific to those treaters during the deposition, Plaintiff still refused to sign. (**Ex. 1**, Plaintiff's Dep., pg.130:2-132:10).

Defendant's counsel specifically asked Plaintiff to provide the generative AI related documents, or a privilege log, and her signed medical authorizations in seven days from the date of her deposition—which would have been December 2, 2025. (**Ex. 1**, Plaintiff's Dep., pg. 21:19-22:4; 119:16-120:1). When Plaintiff did not provide the requested information, Defendants' counsel asked to meet and confer with Plaintiff in an effort to avoid involving the Court. (**Ex. 4**, December 2-4, 2025, Email Chain). Plaintiff refused and claimed she did not "see a basis for a meet and confer." (**Ex. 4**).

Given the direct relevance of the information to Defendants' defenses, and in light of Plaintiff's own efforts to obtain Defendants' privileged materials and a privilege log, Defendants have no alternative but to file this Motion.[1]

## III.   LAW & ANALYSIS

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

---

[1] Defendants had no choice but to file this Motion after the close of discovery as they learned of this information during Plaintiff's deposition November 25th and were in communication with Plaintiff to try and resolve the issue just days before discovery closed December 5, 2025. (**Ex. 4**, December 2-4, 2025, Email Chain).

claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37(a) permits a party to move for an order compelling discovery, including an order compelling the production of requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). "Before moving to compel, Local Rule 37.1, like Rule 37(a)(1), obligates the parties to undertake in good faith efforts to resolve any discovery dispute before filing a motion with the Court." *James v. Cuyahoga Cty.*, 648 F. Supp. 3d 897, 903 (N.D. Ohio 2022).

"On a motion to compel discovery, the moving party bears the burden of demonstrating relevance." *White v. City of Cleveland*, 417 F. Supp. 3d 896, 902 (N.D. Ohio 2019). "At this discovery stage in the case, [s]howing relevance is an extremely low bar … If relevancy is shown, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Ritter v. Adducci (In re DuMouchelle)*, Nos. 19-54531, 20-4381, 2024 Bankr. LEXIS 3002, at *10 (Bankr. E.D. Mich. Dec. 16, 2024).

### A. The generative AI materials are relevant and discoverable.

Plaintiff has admitted to using ChatGPT to draft filings, and that she uploaded case-related emails and other materials many times. Her prompts/queries and the AI outputs are directly relevant to issues that include, at minimum: (i) the authenticity and authorship of filings and assertions made in this case; (ii) potential admissions

against interest embedded in her prompts (*for example, she could have identified weaknesses in her claims and position, described those weaknesses and asked the third-party generative AI tool to address and minimize them, or she could have admitted elements of her prima facie claims away*); (iii) whether she disclosed or publicized information pertaining to the case to a third party; (iv) her preservation of evidence; and (v) her credibility. Further, Plaintiff could have made statements to the generative AI tool that directly contradict her written statements during her employment, or testimony at deposition. Plaintiff's deposition confirms the existence of responsive materials and that they are within her possession, custody, or control via her ChatGPT account history. Plaintiff has offered no valid basis to withhold these records. Her *pro se* status and claim that these records are protected under the work product doctrine is inapplicable.

### B. Plaintiff's work-product objections should be overruled.

Plaintiff is not an attorney, is self-represented, and yet relies on the work product doctrine to withhold information and documents related to her AI use. While "Plaintiff is correct that work product protection is not limited to documents prepared by attorneys, [] she misunderstands what courts mean by that." *Harrison v. Whole Foods Mkt., Inc.*, No. 20-cv-04867-JSW (TSH), 2025 U.S. Dist. LEXIS 218462, at *4 (N.D. Cal. Nov. 5, 2025). As explained in *United States v. Nobles*, 422 U.S. 225, 238-39 (1975):

At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. **It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.**

*Id*. (emphasis added). Therefore, whereas here there is "no attorney in the picture," Plaintiff cannot assert the work product doctrine to withhold materials. *Harrison v. Whole Foods Mkt., Inc.*, at *5 (finding that a *pro se* Plaintiff could not assert the work product protection given that she was not an attorney or agent of an attorney who prepared the documents).

The Court in *Morgan v. AMISUB (SFH), Inc.*, No. 18-cv-2042-TLP-tmp, 2020 U.S. Dist. LEXIS 131330, at *6 (W.D. Tenn. July 24, 2020) similarly overruled a *pro se* Plaintiff's objections on the basis of attorney-client privilege. Citing *Svete v. Wunderlich*, No. 2:07-CV-156, 2009 U.S. Dist. LEXIS 49801 at *1 (S.D. Ohio June 11, 2009) the Court explained:

Morgan seems to assert that certain information is protected by attorney-client privilege because, by proceeding *pro se*, she is acting both as attorney and client. (*Id*.) Morgan writes: "When the Plaintiff put[s] on her attorney hat she must confer with her client the Plaintiff. Therefore by confer[ring] with her client Plaintiff is invoking her attorney client privilege." (*Id*. at 11.) **This argument lacks merit.**

Many of the objections asserted by plaintiff lack even an arguably colorable basis. For example, plaintiff, who is proceeding *pro se*, invokes the attorney-client privilege or work-product doctrine.

> To the extent that Morgan seeks to assert such an argument, the motion for a protective order in this regard is hereby DENIED. Again, to the extent that Morgan objects to AMISUB's discovery requests on this basis, any such objection is overruled.

*Morgan v. AMISUB (SFH), Inc.*, at *6-7 (internal citations and quotations omitted) (emphasis added). Accordingly, just as the Courts decided in *Harrison* and *Morgan*, because Plaintiff is *pro se*, and the doctrine was only designed to protect the work of an attorney or the work of those acting on behalf of the attorney, her work is not entitled to any privilege or work product protection.

Even further to the point as to why Plaintiff's work product objection fails, is the fact that she has voluntarily disclosed this information to a third party—ChatGPT. See *Nobles*, 422 U.S. at 239 ("The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived.") Within the terms and conditions of ChatGPT, it specifically states that the platform "may use Content to provide, maintain, develop, and improve our Services, comply with applicable law, enforce our terms and policies, and keep our Services safe."[2] This means that the admin of ChatGPT, which are any random individuals, will be able to access the emails, documents, filings and prompts Plaintiff has put into the database, and use that information to provide output for other users, which could be

---

[2] See ChatGPT powered by OpenAI's terms and conditions at this web address: https://openai.com/policies/terms-of-use/

any number of other individuals with any interest against Defendants. "[W]ork product protection is waived only when documents are used in a manner contrary to the doctrine's purpose, when disclosure substantially increases the opportunity for potential adversaries to obtain the information … Protection is thus forfeited when work product materials are either given to an adversary or used in such a way that they may end up in the hands of an adversary." *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009) (internal citations and quotations omitted).

Plaintiff's use of ChatGPT, a tool maintained by a third party that is not an agent or contractor of Plaintiff in the same sense that an expert witness would be, clearly puts otherwise non-public information in the hands of any individual who wants to sue Defendants, including her version of unsupported and untrue facts, that Defendants must have access to, in order to defend this case and any future litigation that stems from the result of this information being shared. Any ruling to the contrary would effectively confer upon generative AI tools the status of "attorney," and would give plaintiffs the encouragement and license to displace actual human lawyers with generative AI tools and assert privilege and work product protections for all communications with the tool.  Such a result is not contemplated or condoned by the Federal Rules of Civil Procedure or case law outlining discovery obligations and addressing privilege and the work product doctrine.

Defendants recognize that the issue of a *pro se* Plaintiff withholding materials shared with or produced by generative AI, on the basis of work product, is a new issue before the Court, but it is one worth addressing that should not be side stepped or deemed frivolous. *See Varlesi v. Wayne State Univ.*, No. 10-14793, 2013 U.S. Dist. LEXIS 42568, at *7-8 (E.D. Mich. Feb. 25, 2013) ("This Court understands profoundly that the advancement and evolution of the law requires the presentation of novel, or indeterminate, legal theories. In a case such as this, where that theory is not facially unreasonable or frivolous, it is this court's role to protect and encourage earnest advocacy on unsettled issues.") *See* Law360's February 16, 2023 article, "*Litigators Should Approach AI Tools With Caution*" discussing the potential waiver that comes from divulging case related information to a generative AI site:

> ChatGPT improves by using the information and/or data provided by users to "develop and improve." As a result, by using ChatGPT, the user agrees to allowing ChatGPT to "use Content to develop and improve the Services." In other words, unless the user affirmatively opts out, the user allows ChatGPT to use the input in the future.

> This could cause concerns for the attorney-client relationship. **It is axiomatic that attorney-client privileged information loses its protection once it is shared with a third party.** The question here is whether sharing privileged information with ChatGPT would waive the privilege.

> Also, asking whether disclosing such information to the system itself may not be the entire inquiry. Upon logging into ChatGPT, the user must accept a warning that states: "Conversations may be reviewed by our AI trainers to improve our systems." This seems to pose even more of a threat of waiver of the attorney-client privilege.

> Even if the attorney does not include confidential client information in the input, another concern for litigators is whether using ChatGPT waives the work product doctrine. If so, the lawyer's ChaptGPT history and drafts of litigation documents could be subject to discovery.

*Id.* at *Points of Caution*, *Confidentiality Concerns* (attached as **Ex. 6**) (emphasis added).

While a *pro se* party's ability to assert the work product doctrine has come up in the Eastern District of Michigan, this Court has avoided taking any definitive position. In *Coles v. Dearborn Midwest Co.*, No. 13-14450, 2014 U.S. Dist. LEXIS 180552, at *6 (E.D. Mich. Sep. 17, 2014) the Court never reached a conclusion as to whether the *pro se* Plaintiff could assert the protection but undertook an analysis as to whether the documents in dispute were prepared in anticipation of litigation. Ultimately the Court ordered the Plaintiff to produce the notes because evidence showed they were prepared to make reports to human resources and not for the purposes of litigation. "Under these circumstances, ***even if a pro se plaintiff can assert work product protection***, plaintiff's claim of work protection must fail because the documents were admittedly not prepared in anticipation of litigation." *Id.* (emphasis added).

Similarly, in *Dassault Systemes, SA v. Childress*, No. 09-10534, 2013 U.S. Dist. LEXIS 202983, at *3-4 (E.D. Mich. Nov. 22, 2013) the Court simply assumed that a *pro se* party could assert the doctrine since Defendant did not object to it.

11

"Given that Dassault has not objected to defendant's right to assert the work product doctrine, the undersigned will assume that a *pro se* plaintiff may do so." *Id*.

Both *Coles* and *Dassault* are decisions from over ten years ago before the wide-spread accessibility of generative AI, and before there was ever a trend of *pro se* plaintiffs using generative AI tools to displace assistance by human counsel. The Courts in those cases were not faced with deciding issues that pose such significant risk as is posed here. Ultimately, if Courts allow *pro se* parties to withhold generative AI materials on the basis of privilege or work product, it will jeopardize fairness, shield potential inaccuracies or fabrication, and undermine proportional, reliable discovery. This is a rapidly growing concern that the Courts must address before additional harm is done.

### C. At a minimum, the Court should require a proper privilege log.

To the extent the Court is inclined to recognize any qualified protection as to any specific item, Plaintiff must at least log those items so the Court and Defendants can evaluate the claims. See *Dassault Systemes, SA v. Childress*, No. 09-10534, 2013 U.S. Dist. LEXIS 202983, at *8 (E.D. Mich. Nov. 22, 2013) (where the Court ordered the *pro se* Defendant to prepare a privilege log for the documents claimed to be work product). Contrary to what Plaintiff argued during her deposition; material withheld as work product (i.e. material subject to protection as trial-

preparation material) must be described on a privilege log pursuant to Fed R. Civ. P. 26(b)(5).

### D. The Court should compel Plaintiff to execute HIPAA-compliant authorizations for her medical and mental-health records.

Plaintiff seeks emotional-distress damages and was specifically questioned about medications, treatment, and providers. She identified multiple providers and conditions but refused to sign narrowly tailored authorizations at her deposition. Those records are relevant to the nature, cause, and extent of her alleged distress; to potential alternative causes; to treatments, diagnoses, medications, and symptom history; and ultimately to damages. Courts routinely compel authorizations in these circumstances. *See Simon v. Cook*, 261 F. App'x 873, 886 (6th Cir. 2008) ("this circuit has held that placing one's mental health at issue constitutes waiver of the [psychotherapist-patient] privilege."); *Van Beek v. Robinson*, No. 2:11-CV-10514, 2012 WL 1676641, at *2 (E.D. Mich. May 14, 2012) ("I conclude that the discovery sought by defendants is discoverable under Fed.R.Civ.P. 26, because plaintiff's complaint places into issue her mental and emotional state."); *McPherson v. Vignobles Sullivan, LLC*, No. 3:20-cv-00384, 2022 U.S. Dist. LEXIS 46525, at *10 (M.D. Tenn. Mar. 16, 2022) ("Courts in this circuit generally find that medical records are relevant to claims for emotional distress or mental anguish.")

Accordingly, Plaintiff must sign and return authorizations for the records of Therapists Maria Yoo and Lemica Cox, as well as Dr. Shazia Qumar.

## IV.   CONCLUSION

For the above stated reasons, Defendants respectfully request that the Court enter an order that:

1. Compels Plaintiff, within seven days, to produce all documents and information concerning her use of AI tools in connection with this lawsuit, including: all prompts/queries submitted; all documents, emails, text, or data uploaded or input to any AI tool; all outputs/responses received; all account activity logs, usage histories, and exportable chat histories or archives reflecting any of the foregoing.

2. Overrules Plaintiff's attorney–client privilege and work-product objections to the AI materials, or alternatively, if the Court sustains any privilege or protection as to any item, require Plaintiff, within seven days, to serve a Rule 26(b)(5)(A)-compliant privilege log.

3. Compels Plaintiff, within seven days, to execute HIPAA-compliant medical authorizations for the medical and mental-health providers Plaintiff identified in her deposition.

4. Orders Plaintiff to bear Defendants' reasonable expenses, including attorneys' fees, incurred in bringing this motion, pursuant to Rule 37(a)(5).

Respectfully submitted,

 /s/Richard W. Warren
Richard W. Warren (P63123)
Lauren D. Harrington (P85545)
OGLETREE, DEAKINS, PLLC
*Attorneys for Defendants Gilbarco Inc.,*
    *and Gilbarco, Inc., (d/b/a Gilbarco*
    *Veeder-Root) only*
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
T: (248) 593-6400
richard.warren@ogletree.com
lauren.harrington@ogletree.com

Dated: December 23, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys and parties of record.

/s/Richard W. Warren
Richard W. Warren (P63123)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC
*Attorneys for Defendants Gilbarco Inc., and Gilbarco, Inc., (d/b/a Gilbarco Veeder-Root) only*
34977 Woodward Avenue, Suite 300
Birmingham, MI  48009
(248) 593-6400
richard.warren@ogletree.com

94638901.v1-OGLETREE