# EXHIBIT 6

## *Litigators Should Approach AI Tools With Caution*

**Go to:** Potential Benefits  |  Points of Caution  |  Conclusion  |  Related Content
*Current as of: 02/16/2023*



All Content © 2003–2023, Portfolio Media, Inc.

By *Zachary Foster* and *Melanie Kalmanson*, Quarles & Brady LLP

Law360 (February 2, 2023, 6:08 PM EST) -- The new ChatGPT platform, developed and operated by OpenAI LLC, has taken the world by storm.

It has an impressive ability to take direction and, in turn, produce prose in almost any context — including those that could be used in a litigation practice. While ChatGPT certainly presents unique opportunities to litigators for streamlining certain areas of practice, they should be cautious of potential pitfalls with handing over the reins.

**Potential Benefits**

Artificial intelligence tools such as ChatGPT have become increasingly common in the legal profession. Litigators have begun using AI systems to streamline various aspects of the litigation process, resulting in improved efficiency and outcomes.

For instance, AI-driven document review systems can quickly identify relevant documents within large document sets, allowing small review teams to process a large volume of materials quicker. Legal research providers have also highlighted the capabilities of AI-driven natural language search engines, which are able to anticipate search objectives and provide relevant case law.

ChatGPT stands out due to its powerful ability to process natural language and to quickly answer questions and perform language-based tasks with minimal input. This functionality can potentially be used by litigators in a variety of ways to enhance their practices.

*Filling in for Staff*

Do you need a shell letter to send to opposing counsel? Are you looking for a list of possible objections to a request for production? ChatGPT can quickly generate a first draft of these documents for you, saving you the time and effort of starting from scratch or searching for a form.

For example, we asked ChatGPT to "draft a letter to opposing counsel enclosing a settlement check and signed settlement agreement and requesting that he dismiss the case with settlement pursuant to the terms of the settlement agreement." Within seconds, it produced the following draft letter:

Dear [Counsel],

> I hope this letter finds you well. Enclosed please find a settlement check in the amount of $[amount] and a signed copy of the settlement agreement that we discussed.
>
> In accordance with the terms of the settlement agreement, we request that you dismiss the case with prejudice and without costs to either party. Please confirm receipt of the settlement check and let us know if there are any issues with the agreement.
>
> We appreciate your cooperation in resolving this matter and hope to have the opportunity to work together again in the future.
>
> Sincerely, [Your name]

Not bad. But hold on. We forgot to include a request to return confidential information, so we told the program to "add a section requesting that he return all documents designated confidential and produced during discovery" and our digital assistant generated a new letter instantly:

> Dear [Counsel],
>
> I hope this letter finds you well. Enclosed please find a settlement check in the amount of $[amount] and a signed copy of the settlement agreement that we discussed.
>
> In accordance with the terms of the settlement agreement, we request that you dismiss the case with prejudice and without costs to either party. Please confirm receipt of the settlement check and let us know if there are any issues with the agreement.
>
> In addition, we request that you return all documents designated as confidential and produced during the discovery process. Please confirm that you have done so upon receipt of this letter.
>
> We appreciate your cooperation in resolving this matter and hope to have the opportunity to work together again in the future.
>
> Sincerely, [Your name]

While the letters produced by ChatGPT may not be perfect, it serves as a good starting point and took 30 seconds to produce — most of which was us typing the prompts. By integrating this AI tool into the drafting process, litigators can save time preparing routine documents and improve the overall efficiency of their practice.

### *A Quick Start on Research*

ChatGPT's ability to conduct legal research and generate a natural language analysis can significantly speed up the process of researching and analyzing legal issues.

Let's say you needed a primer on what constitutes express consent under the Telephone Consumer Protection Act. You would ask ChatGPT, "What constitutes express consent under the TCPA?" and get the following response:

> The Telephone Consumer Protection Act (TCPA) is a federal law that regulates telemarketing calls, text messages, and faxes. Under the TCPA, it is generally illegal for businesses to make calls or send text messages to a consumer's cell phone or other wireless device using an automated dialing system

or an artificial or prerecorded voice unless the consumer has provided "express consent" to receive such communications.

Express consent under the TCPA can take various forms, including:

1. Verbal consent: This is when a consumer gives permission over the phone or in person to receive calls or text messages from a particular business.

2. Written consent: This is when a consumer provides written permission, such as by signing a form or agreeing to the terms of a contract that includes a consent clause.

3. Electronic consent: This is when a consumer provides consent through electronic means, such as by clicking a box on a website or responding to a text message.

In order to constitute express consent under the TCPA, the consent must be clear and conspicuous and must relate specifically to the type of communication at issue. The consumer must also have the opportunity to revoke their consent at any time.

Accurate and concise. Well done, ChatGPT.

What if we went a step further and asked our plucky AI junior associate to provide case law from the U.S. Court of Appeals for the Eleventh Circuit supporting this analysis and received what, at first glance, looked like a great outline of Eleventh Circuit decisions with a one-sentence summation of each case.

However, when we tried to pull the cases, we found that, rather than decisions from the Eleventh Circuit, ChatGPT had instead given me cases from the U.S. Court of Appeals for the Third and Ninth Circuits with an Eleventh Circuit designation swapped into the citation. A coachable moment for sure.

Bottom line: ChatGPT can offer an efficient head start when researching an issue, but as OpenAI itself warns, "ChatGPT sometimes writes plausible-sounding but incorrect or nonsensical answers."[1]

### *Revising Your Prose*

It can be challenging to modify the style of a brief once it has been completed. Many attorneys aspire to edit their prose to be punchier and more persuasive, but these goals may be difficult to achieve due to tight deadlines, cost constraints that limit the number of redrafts, and the inherent challenge of altering one's writing style.

ChatGPT's natural language processing capabilities can be particularly useful in this regard, as it can quickly reconstruct prose while maintaining the key points and arguments. For example, consider the following paragraph from a reply brief in support of a motion to dismiss:

Plaintiffs' Response to Defendants' Motion to Dismiss ("Response") is an exercise in misdirection, attacking positions Defendants have not taken while ignoring dispositive arguments actually made. Plaintiffs also implicitly acknowledge the infirmities of their claims by attempting to amend them — arguing at various places that their case is based on a fraudulent "scheme" rather than on a series of alleged misrepresentations, as the Amended Complaint makes abundantly clear. This belated effort at amendment is unavailing, and the Response simply reinforces that the claims are deficient and should be dismissed.

We asked ChatGPT to "revise this paragraph to be more persuasive" and ChatGPT gave us the following rewrite:

> In their Response to Defendants' Motion to Dismiss, Plaintiffs have attempted to divert attention away from the dispositive arguments made by Defendants. Instead of addressing these arguments, Plaintiffs have chosen to attack positions that Defendants have not taken. This tactic reveals that Plaintiffs are aware of the weaknesses in their own claims. In an attempt to salvage their case, they have tried to amend their allegations, now claiming that their case is based on a fraudulent "scheme" rather than on the misrepresentations outlined in the Amended Complaint. However, this last-ditch effort at amendment cannot save their flawed claims and only serves to further highlight their deficiencies. Therefore, the Response only serves to reinforce the argument that the claims should be dismissed.

Certainly, a strong rewrite. While the original drafters may not have used the paragraph verbatim, especially if the brief has space constraints, as ChatGPT added 34 extra words, the edits increased the Flesch Reading Ease score by 19.3 points and lowered the Flesch-Kincaid Grade Level from 14.9 to 11.6. This shows that the edits made the prose more accessible and easier to understand, and helps the drafter identify areas in their writing that may have been overlooked for improvement.


## Points of Caution

Not so fast. Before diving headfirst into the world of AI-assisted litigation work, we urge you to consider a few cautionary points.

### *Confidentiality Concerns*

Confidentiality and the attorney-client privilege are the cornerstones of any attorney-client relationship. Does a lawyer's use of ChatGPT affect that relationship?

It seems the creators of ChatGPT had situations like this in mind. Before proceeding to use the system, the user must accept a warning that states: "Please don't share any sensitive information in your conversations."[2]

ChatGPT improves by using the information and/or data provided by users to "develop and improve."[3] As a result, by using ChatGPT, the user agrees to allowing ChatGPT to "use Content to develop and improve the Services."[4] In other words, unless the user affirmatively opts out, the user allows ChatGPT to use the input in the future.[5]

This could cause concerns for the attorney-client relationship. It is axiomatic that attorney-client privileged information loses its protection once it is shared with a third party. The question here is whether sharing privileged information with ChatGPT would waive the privilege.

Especially considering that the user agrees to allow ChatGPT to store and use the information, it is possible.[6] In the examples used above, we did not provide confidential client information to ChatGPT. Names, settlement amounts and other details are omitted from the prompts. However, it is easy to imagine a situation where the lawyer would input confidential client details that could compromise the attorney-client relationship.

Also, asking whether disclosing such information to the system itself may not be the entire inquiry. Upon logging into ChatGPT, the user must accept a warning that states: "Conversations may be reviewed by our AI trainers to improve our systems."[7] This seems to pose even more of a threat of waiver of the attorney-client privilege.

Even if the attorney does not include confidential client information in the input, another concern for litigators is whether using ChatGPT waives the work product doctrine. If so, the lawyer's ChaptGPT history and drafts of litigation documents could be subject to discovery.

Since the attorney-client privilege belongs to the client, the lawyer should proceed with caution using the ChatGPT. The terms of use make clear that a user cannot "use the Services in a way that infringes, misappropriates or violates any person's rights."[8]

At the least, we recommend obtaining client consent before using ChatGPT. In fact, the terms of use state upfront that "[i]f you use the Services on behalf of another person or entity, you must have the authority to accept the Terms on their behalf."[9]

## *Plagiarism Concerns*

The terms of use state that users "may not ... represent that output from the Services was human-generated when it is not."[10] However, the terms later provide that OpenAI assigns to the user "all its right, title and interest in and to Output."[11]

This creates an interesting question as to whether lawyers are required to make a notation in any filings that include ChatGPT output that the prose was generated by ChatGPT.

Also, the lawyer should be aware that his motion to dismiss drafted in record time may not be as unique to the client as human-drafted motions are. The terms caution that prose generated by ChatGPT could result in what appears to be plagiarized prose due to duplication or repetitiveness in the output:

> Output may not be unique across users and the Services may generate the same or similar output for OpenAI or a third party. For example, you may provide input to a model such as "What color is the sky?" and receive output such as "The sky is blue." Other users may also ask similar questions and receive the same response. Responses that are requested by and generated for other users are not considered your Content.[12]

Thus, using output verbatim is not advised. Instead, it is best practice to use the output as a starting point — for other reasons, too, as discussed below.

## *Double-Check the Research*

As the Eleventh Circuit example above shows, even if ChatGPT provides the most beautiful prose you have ever read, you should always double-check the research and law. ChatGPT is only as good as the data it is pulling from.

As noted above, ChatGPT creators note that ChatGPT "sometimes writes plausible-sounding but incorrect or nonsensical answers."[13] In fact, the first time you log in and use the site, a warning pops up that says: "While we have safeguards in place, the system may occasionally generate incorrect or misleading information and produce offensive or biased content. It is not intended to give advice."[14]

The terms of use also make clear that the onus is on the user to ensure that the use of any output is legal: "You are responsible for Content, including for ensuring that it does not violate any applicable law or these Terms."[15] Yet another reason to not take ChatGPT at its word.

### *Check Local Rules*

Similarly, as with any filing, it is the lawyer's responsibility to ensure that any filing complies with the local rules. Regardless of how much as you plug into ChatGPT, remember that it does not have the benefit of the local rules and practices in the court in which you are practicing. The lawyer should still check the local rules for requirements regarding formatting, citations, etc., to ensure compliance.

### Conclusion

What's the bottom line? We asked ChatGPT to see what our trusty new associate thinks about its own competency — a performance evaluation if you will. When asked, "Should I rely on ChatGPT for litigation work?" ChatGPT responded:

> It is not recommended to rely solely on ChatGPT or any other AI-based system for legal work, including litigation. While ChatGPT can provide useful information and suggestions, it is not a substitute for the expertise and judgement of a licensed attorney. Additionally, laws and regulations can vary significantly depending on jurisdiction, and ChatGPT may not have knowledge of the specific laws and regulations applicable to your case. It is always best to consult with a qualified legal professional to ensure that your legal needs are properly met.

On that assignment, our new star associate hit it out of the park. We couldn't have said it better ourselves.

[1] ChatGPT: Optimizing Language Models for Dialogue, OpenAI, *https://openai.com/blog/chatgpt/* (last visited Jan. 11, 2023).

[2] ChatGPT, www.chat.openai.com/chat (last visited Jan. 18, 2023).

[3] Terms of Use, OpenAI, *https://openai.com/terms/* (last modified Dec. 13, 2022).

[4] Id. The Terms of Use "take effect when [the user] first use the Services and remain in effect until terminated." Id.

[5] Id.

[6] See ChatGPT FAQ, OpenAI, *https://help.openai.com/en/articles/6783457-chatgpt-faq* (last visited Jan. 11, 2023); see also Danielle E. Tricolla & Gabrielle E. Botticelli, Be Careful What You're Writing, Best Lawyers (Sept. 2, 2022), *https://www.bestlawyers.com/article/attorney-client-privilege-in-the-digital-age/4695* (discussing attorney-client privilege concerns in the digital age).

[7] ChatGPT, supra note 2.

[8] Terms of Use, supra note 3.

[9] Id.

Litigators Should Approach AI Tools With Caution

[10] Id.

[11] Id. The Terms of Use define "Output" as "output generated and returned by the Services based on the Input." Id.

[12] Id.

[13] ChatGPT: Optimizing Language Models for Dialogue, supra note 1.

[14] ChatGPT, supra note 2.

[15] Terms of Use, supra note 3.

*This article* was originally published on *Law360*, providing up-to-the-minute legal news coverage and analysis on the issues that affect attorneys, business leaders, and regulators.


**Related Content**

*Resources Kits*

- *Generative Artificial Intelligence (AI) Resource Kit*

- *Civil Litigation Fundamentals Resource Kit (Federal)*

*Practice Notes*

- *Predictive Coding Fundamentals (Federal)*

- *E-discovery Best Practices (Federal)*

- *Metadata in E-discovery (Federal)*

- *Predictive Coding Fundamentals (Federal)*

- *Technology-Assisted Review: Overview (Federal)*

*Checklists*

- *ESI Production Formats Chart (Federal)*

- *Email Threading in E-discovery Checklist (Federal)*

- *E-discovery Search Terms Checklist (Federal)*

*Templates*

- *Document Retention Policy (Federal)*

- *E-discovery Order (Federal)*

- *Litigation Hold Notice (Federal)*

Litigators Should Approach AI Tools With Caution

**End of Document**