# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SOHYON WARNER,

                                 Case No. 24-12333

            Plaintiff,        Hon. Gershwin A. Drain

v.                             Mag. Judge Anthony P. Patti

GILBARCO, INC., GILBARCO, INC. (d/b/a
GILBARCO VEEDER-ROOT) and
VONTIER CORPORATION,

            Defendants.

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AND FOR SANCTIONS

## I. INTRODUCTION

Plaintiff, Sohyon Warner, appearing pro se, respectfully opposes Defendants' overreaching and punitive Motion to Compel. As a threshold matter, the Court should deny the motion outright for Defendants' failure to comply with this District's Local Rules and Magistrate Judge Patti's discovery-motion procedures, including the mandatory conferral and joint-submission requirements of Local Rule 7.1 and Rule 37(a). Independently, the motion fails as a matter of law because

it seeks to reopen closed discovery without good cause under Rule 16(b)(4) and to compel disclosure of protected opinion work product barred by Rule 26(b)(3).

Defendants' motion does not seek to compel any identified, withheld discovery. Instead, it asks the Court to compel Plaintiff's internal analysis and mental impressions—i.e., her thought process—rather than any existing document or evidence, which is not discoverable as a matter of law. The motion seeks intrusive post-discovery production based on speculation about what might exist in Plaintiff's internal drafting process, untethered from Rule 26 relevance, disregarding the heightened protection afforded to opinion work product, and improperly attempting to manufacture a waiver where none exists.

At its core, Defendants' request is a fishing expedition, as they cannot identify a single withheld, discoverable document. Plaintiff consistently objected on well-established work-product and proportionality grounds and confirmed that no non-privileged responsive materials exist beyond documents already produced or in Defendants' possession.

As used herein, "ChatGPT" refers to a generative AI drafting tool used solely to assist with drafting text, not legal counsel, an agent, or an evidence repository.

Compounding these defects, Defendants bring this motion *after* the close of discovery without good cause, even though the ChatGPT-related issue was raised

during discovery and expressly resolved by Court order, and despite Plaintiff having already provided a limited-scope HIPAA authorization months earlier. Their motion thus reflects not diligence, but an improper attempt to reopen discovery, intimidate a pro se litigant, and gain strategic insight into Plaintiff's mental impressions and trial strategy. Because Defendants' motion is procedurally defective, legally unsupported, **irrelevant to the merits of the case**, and premised on conjecture rather than evidence, it should be denied in its entirety and Defendants' request for sanctions rejected.

## II. BACKGROUND/PROCEDURAL HISTORY

Discovery closed on December 5, 2025. Defendants' post-discovery motion violates Fed. R. Civ. P. 16(b)(4) by seeking new discovery without modifying the scheduling order, Fed. R. Civ. P. 37(a)(1) and Local Rule 7.1 by bypassing mandatory conferral and joint-submission procedures, and Fed. R. Civ. P. 26(b)(1)–(3) by pursuing speculative, disproportionate discovery into protected opinion work product. This motion is barred as a matter of law before the Court reaches substance.

Defendants devoted substantial deposition time to speculative, hypothetical concerns regarding Plaintiff's use of ChatGPT, yet identified no specific withheld, discoverable document. Rather than timely seeking Court intervention during discovery, Defendants now attempt to conflate a third-party drafting tool with an

attorney or litigation agent, recasting Plaintiff's internal drafting activity as attorney communications, ChatGPT prompts as "case evidence," and the absence of compelled production or a privilege log as grounds for post-discovery relief. That framing mischaracterizes both the record and the governing law.

ChatGPT is not a licensed attorney, does not provide legal representation, owes no fiduciary duties, does not act on Plaintiff's behalf, and does not communicate with an adversary. Work-product protection attaches to Plaintiff's mental impressions and materials prepared in anticipation of litigation and belongs to Plaintiff, not to the drafting tool used. Plaintiff maintained no separate litigation-strategy documents beyond her public docket filings. Accordingly, there is **nothing to compel and nothing to log**.

Defendants' purported ChatGPT issue, the alleged risk of uploading confidential documents into ChatGPT, was already raised, addressed, and resolved by the Court's October 30, 2025 Order. (ECF No. 66). Defendants now advance a retroactive theory that improperly equates the use of a private drafting tool with disclosure to a third party, collapsing the protections of Rule 26(b)(3). Plaintiff's deposition established only that she used a drafting interface to prepare protected work product; it identified no disclosure to an adversary, no communication to any human third party, and no factual inconsistencies. Defendants point to no

admissions, contradictions, or waivers, only conjecture, which is insufficient as a matter of law.

Plaintiff also satisfied her medical discovery obligations during the discovery period by executing and providing a limited, HIPAA-compliant authorization narrowly tailored to the conditions placed at issue. The Federal Rules do not require re-execution or duplicative medical authorizations absent a court order, and none exists here.

This motion is a distraction from the merits of the case. While devoting pages to Plaintiff's drafting process, Defendants' own court-ordered discovery obligation remains incomplete. Their request for sanctions without a predicate discovery order is baseless. For the reasons below, the motion should be denied in its entirety.

Defendants' timing problem is entirely of their own making. Discovery closed on December 5, 2025. Eighteen days later, Defendants filed the instant motion seeking expansive and novel discovery into matters unrelated to the merits. The undisputed procedural history is as follows:

1. **October 17, 2025** – During the Court-ordered meet-and-confer on Plaintiff's motion to compel, Defendants diverted the discussion from the discovery issues identified by the Court to raise a new, previously unasserted issue regarding generative AI. Defendants confirmed in writing that their concern

was limited to the *hypothetical* uploading of confidential discovery materials into AI tools, not any actual disclosure to Defendants or third parties, and not Plaintiff's use of AI for drafting or other purposes. (Exhibit A - Email from Defendants' Counsel Narrowing AI Issue to Confidentiality Concerns)

2. **October 23, 2025** – Plaintiff expressly relied on that limitation when preparing and serving her supplemental discovery responses.

3. **October 30, 2025** – The Court accepted the Defendants' stated limitation and resolved the issue. (ECF No. 66.)

4. **November 25, 2025** – At Plaintiff's deposition, Defendants questioned Plaintiff extensively on hypothetical AI-related scenarios, while identifying no undisclosed documents, no false statements, and no inaccuracies in Plaintiff's testimony or filings. Plaintiff answered the same question multiple times, after which counsel objected to further repetition.

5. **December 2, 2025** – Defendants again raised this collateral issue by correspondence, demonstrating full awareness of their theory during the discovery period. (ECF No. 80-5.)

6. **December 4, 2025** – Plaintiff provided a substantive written response explaining that ChatGPT is a drafting tool, not a third party, and that the requested materials constituted protected opinion work product. Where a party articulates a legally grounded objection, and the opposing party

presents no new factual or legal basis, further conferral serves no purpose under Rule 37. (Exhibit B)

7. **Later on December 4, 2025** – Defendants sent a lengthy email styled as a "summary of [their] basis for a Motion to Compel." The email did not address Plaintiff's legal analysis but instead advanced a new and unsupported theory conflating tool use with third-party disclosure and asserting, contrary to Defendants' October 17 position, that pro se litigants cannot invoke work-product protection. The email concluded with a threat to file a motion if Plaintiff did not capitulate. (ECF No. 80-5.)

8. **December 5, 2025** – Discovery closed.

9. **December 9, 2025** – Defendants requested Plaintiff's consent to extend discovery.

10. **December 11, 2025** – Plaintiff declined Defendants' request. (Exhibit C)

11. Defendants did not seek modification of the Scheduling Order, did not move to compel during the discovery period, and obtained no court order authorizing the relief they now seek.

12. **December 23, 2025** – Defendants filed the instant Motion to Compel, eighteen days after discovery closed.

This sequence establishes that Defendants were aware of the issue during discovery, induced Plaintiff's reliance on their October 17 limitation, did not seek

modification of the Scheduling Order under Rule 16(b)(4), and now attempt to manufacture a post-deadline discovery dispute.

### III. DEFENDANTS' MOTION IS UNTIMELY, PROCEDURALLY IMPROPER, AND CONSTITUTES AN ABUSE OF PROCESS

Defendants disregarded this Court's mandatory discovery-motion procedures. They manufactured a dispute concerning Plaintiff's protected opinion work product, an issue she had already unequivocally objected to in writing and during her deposition. After Plaintiff declined their request to extend discovery, they bypassed the required joint-submission process and filed a Motion to Compel eighteen days after the close of discovery. They did not seek modification of the Scheduling Order or demonstrate good cause, as required by Rule 16(b)(4), which bars post-deadline discovery motions.

Defendants' motion is untimely and procedurally defective. They filed it after the close of discovery without seeking, let alone justifying, a modification of the Court's Scheduling Order. Parties who delay in enforcing discovery rights until after deadlines have passed "act at their own peril," and courts routinely deny such untimely motions. *Wells v. Sears, Roebuck & Co.*, 203 F.R.D. 240, 241 (S.D. Miss. 2001). This failure alone warrants denial.

Courts are especially reluctant to compel discovery after the close of discovery where the moving party identifies no newly discovered facts and seeks material that intrudes into an opponent's protected litigation strategy. See *Inge v.*

*Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002); Hickman v. Taylor, 329 U.S. 495, 510–11 (1947).*

Granting this untimely motion would severely prejudice Plaintiff, who has justifiably relied on the closure of discovery. Under these circumstances, a post-deadline motion to compel ordinarily cannot satisfy Rule 37's good-faith requirement or Rule 26(b)'s proportionality standard. Courts do not permit parties to retroactively broaden discovery after inducing reliance, declining timely relief, and then filing belatedly. See *Inge, 281 F.3d at 625.*

This Court has already enforced its case-specific procedural requirements, striking Plaintiff's "Statement of Resolved and Unresolved Issues" for failure to comply with the Court's order requiring a joint submission. See ECF No. 66, PageID.632 (striking ECF No. 63). Once ordered, that joint process was mandatory. Consistent application of those standards compels denial of Defendants' motion, which likewise disregarded required procedures and was filed after discovery closed without a scheduling modification or good cause.

Defendants' motion is an impermissible attempt to reopen discovery without satisfying the strict requirements of Rule 16(b)(4) and constitutes misuse of the discovery process. Having affirmatively limited their concern during discovery and declined to seek modification of the Scheduling Order, Defendants now attempt to

expand discovery after the deadline. The Motion to Compel is therefore untimely as a matter of law and should be denied on that basis alone.

### IV. DEFENDANTS CANNOT COMPEL WHAT DOES NOT EXIST: THE WORK PRODUCT DOCTRINE PROTECTS MENTAL IMPRESSIONS FROM DISCOVERY AND LOGGING

Defendants have not identified a single withheld, discoverable document. Instead, their motion seeks access to Plaintiff's mental impressions and internal reasoning rather than factual evidence, material explicitly protected as opinion work product and categorically outside the scope of discovery under Rule 26(b)(3).

Plaintiff's deposition testimony confirms that: (i) the materials Defendants seek consist solely of mental impressions and analytical thought processes; (ii) no separate, discoverable documents were created or retained beyond final filings already produced or available on the docket; and (iii) no discoverable evidence was deleted or destroyed, nor was any material subject to a preservation obligation or court order lost or withheld.

Rule 26(b)(3) protects "the mental impressions, conclusions, opinions, or legal theories prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(B). That protection turns on the "**purpose**" for which the material was prepared, anticipation of litigation, not the medium through which the thinking occurred. Drafting iterations, strategic inquiries, and analytical notes are quintessential opinion work product and are entitled to near-absolute protection. *Hickman,* 329

U.S. at 510–11. Defendants have made no showing, let alone the extraordinary showing required, to justify intrusion into this protected sphere. As Plaintiff explained during her deposition, the materials Defendants seek are not evidentiary facts but private, preparatory thoughts: "That's not evidence, it's my work product, it's my thought process" (ECF No. 80-2, Dep. Tr. 110:17–18); "You cannot discover what I think; that's my thought process" (ECF No. 80-2, Dep. Tr. 111:2–4), "Those are my thoughts, those are not discoverable." (ECF No. 80-2, Dep. Tr. 117:6, 12). The work-product doctrine exists precisely to shield these mental processes from compelled disclosure.

The deposition record further confirms that Defendants fully exhausted and exceeded the permissible scope of this inquiry. Defense counsel repeatedly posed the same question seeking non-existent ChatGPT "artifacts," notwithstanding Plaintiff's consistent explanation that no standalone prompts, drafts, or analytical materials were created or retained. Plaintiff's counsel objected on the record that the question had been "asked and answered" (ECF No. 80-2, Dep. Tr. 108:22–24), later stated expressly that the same question had been asked "five or six times now, and she's given you an answer" (ECF No. 80-2, Dep. Tr. 112:3–6), and further objected that the question had been "asked and answered six times" and lacked relevance to a deposition examination (ECF No. 80-2, Dep. Tr. 118:9–12).

Although defense counsel attempted to recast Plaintiff's objections as implying a privilege-log obligation, Plaintiff's counsel expressly declined to make any such legal concession, and no ruling was sought or obtained. Despite multiple iterations of the same question, Defendants elicited no testimony identifying any withheld document, deleted evidence, or discoverable material.

There is likewise no duty to log non-discoverable mental impressions. Deposition testimony confirms Plaintiff did not retain separate prompts, drafts, or analytical notes beyond final filings already produced. Her testimony reflects non-retention of internal thought processes, not destruction of evidence or failure to preserve discoverable materials, "Yeah, my work product's gone" (ECF No. 80-2, Dep. Tr. 101:6); "I do not delete evidence; that's my thought process" (ECF No. 80-2, Dep. Tr. 111:7).

Rule 26(b)(5) requires a privilege log only for withheld discoverable materials. It does not compel logging of categories that are not discoverable in the first instance, particularly where logging itself would reveal protected mental impressions. See *Petersen v. Douglas Cnty. Bank & Tr. Co.*, 967 F.2d 1186, 1189 (8th Cir. 1992). Because no discoverable, tangible documents were withheld, Rule 26(b)(5)(A) was never triggered.

The deposition record demonstrates non-existence, not obstruction. Despite repeated questioning, Defendants identified no withheld document and instead

sought Plaintiff's mental impressions rather than evidence, placing their request outside the scope of permissible discovery. Because no discoverable materials exist and mental impressions are neither discoverable nor loggable, the motion is legally unsupported, not authorized under the Federal Rules, untimely, and should be denied.

### V. THE COURT HAS ALREADY RULED ON THE GOVERNING PRINCIPLE; DEFENDANTS SEEK TO RELITIGATE AND EXPAND IT

Defendants' motion is a transparent attempt to revisit and radically expand an issue this Court conclusively resolved in October 2025. Their new, sweeping demand for all ChatGPT-related materials directly contradicts the narrow, forward-looking position they previously presented and on which the Court ruled.

On October 17, 2025, defense counsel Richard Warren explicitly defined the scope of the AI issue in writing: ***"I am not seeking an Order barring you from using all forms of generative AI for any purpose. I am seeking an Order preventing you from taking confidential documents produced in this case and uploading those into generative AI tools…"*** **(Exhibit A).** This framing articulated a **limited, speculative confidentiality concern**, not a theory of discoverability, privilege waiver, or entitlement to production.

Critically, when pressed in the same email exchange to identify any written policy or legal authority supporting the asserted confidentiality risk, Defendants

admitted that they had none, stating that there was "no policy in [their] possession." **(Exhibit D)**. Plaintiff reasonably relied on this defined scope.

In its October 30, 2025 Order (ECF No. 66), the Court granted in part Plaintiff's motion to compel and, in doing so, modified the proposed protective order. The Court adopted a narrow, tailored solution, directing "*that any documents marked confidential shall not be uploaded onto any AI platform." Id.* at PageID.628. The Court's Order did **not** declare ChatGPT use broadly discoverable, find a waiver of work-product protection, or order the production of ChatGPT prompts, drafts, or queries. The Court instead imposed the precise, equitable safeguards requested.

Having obtained the precise relief they sought, Defendants now return months later, after the close of discovery, with a contradictory and overreaching demand. They seek to retroactively convert their settled confidentiality concern into a punitive discovery weapon, demanding all ChatGPT materials under a novel waiver theory the Court neither endorsed nor contemplated.

This constitutes an improper attempt to relitigate a closed issue and to expand the Court's narrow protective ruling beyond its express terms. Defendants' motion disregards the finality of the Court's October 30, 2025 Order and seeks to reopen discovery on a vastly broader basis than Defendants previously represented to both the Court and Plaintiff. Principles of judicial economy, the finality of court

14

orders, and fundamental fairness compel rejection of this tactic. Defendants may not obtain a ruling on a limited issue and then, post-discovery, seek a de facto reconsideration through an expanded and inconsistent request.

## VI. LEGALLY ERRONEOUS AND WOULD EVISCERATE MODERN LITIGATION PRACTICE

Defendants' motion rests on a foundational legal error: conflating the use of a drafting tool with disclosure of litigation strategy to a human recipient. This error renders Defendants' waiver theory untenable and their motion legally unsupported. Accepted, Defendants' theory would nullify work-product protection in nearly every modern drafting environment, a result no court has endorsed.

Defendants' waiver theory depends on the incorrect premise that inputting text into a ChatGPT interface constitutes disclosure to an adversary or an adversary-adjacent person. Waiver requires disclosure "to an adversary or to a person who substantially increases the opportunity for potential adversaries to obtain the information." *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009). A password-protected software interface is neither.

Nor did Plaintiff concede waiver through disclosure to a "third party." When defense counsel asserted such disclosure, Plaintiff directly challenged the premise: "Which third party?" (ECF No. 80-2, Dep. Tr. 111:10). The record refutes Defendants' mischaracterization. Use of a drafting interface does not constitute adversarial disclosure or waiver of work-product protection.

Ultimately, Defendants' own questioning exposes the defect in their request. When defense counsel attempted to equate Plaintiff's internal cognition with discoverable material, Plaintiff correctly responded: "So is that discoverable, to get what I think? You cannot discover what I think; that's my thought process." (ECF No. 80-2, Dep. Tr. 111:2–4). Throughout the examination, Plaintiff consistently distinguished evidence from opinion work product, explaining that internal drafting, memory-based iteration, and analytical reasoning are not evidence and do not constitute deletion of discoverable materials. (ECF No. 80-2, Dep. Tr. 110:17–18; 111:7–10). The Federal Rules do not permit compelled disclosure of a party's mental impressions or thought processes. Fed. R. Civ. P. 26(b)(3)(B); *Hickman, 329 U.S. at 511.*

Cloud-based drafting interfaces are non-sentient tools, not human recipients. ChatGPT is an algorithmic interface that performs computation; it is not a "recipient" in the legal sense any more than a calculator "receives" numbers. A waiver requires disclosure to a person or entity whose involvement increases the likelihood of adversarial access, not to the use of a processing mechanism.  Using an interface that processes text algorithmically does not increase adversarial access and therefore cannot constitute a waiver under the governing law.

Defendants may label OpenAI as a "third-party entity," but that label

does not establish a waiver. Waiver turns on whether protected material was disclosed to an adversary or to a person or entity in a manner that **substantially increases the likelihood that an adversary will obtain the information**, not on the corporate existence of a software provider. *Schanfield, 258 F.R.D. at 214.* Under OpenAI's Terms of Use, the user retains ownership of Input and owns the Output; the provider supplies only a neutral processing interface and does not receive, review, or transmit the user's content for adversarial purposes. Plaintiff disclosed nothing to any adversary or adversary-adjacent recipient, and Defendants identify no human review, onward transmission, or pathway by which an adversary could have obtained the information.

Today, as reflected in **Exhibit E**, virtually all legal drafting and research occurs through cloud-based platforms that temporarily store or process data on remote servers, including tools such as Microsoft Word 365, Google Docs, Grammarly Business, and AI-assisted research platforms. Under Defendants' theory, use of any standard cloud-based drafting or research infrastructure would automatically waive work-product protection, an outcome no court has endorsed.

A waiver is functional, not formal: it requires disclosure to an adversary or conduct that materially increases the risk of adversarial access. Using a drafting interface to organize one's own thoughts does neither, and no court has held that mere use of drafting infrastructure waives protection.

## VII. DEFENDANTS' CITED AUTHORITIES ARE MISAPPLIED; NONE SUPPORT COMPELLING INTERNAL DRAFTING MATERIALS, THOUGHT PROCESSES, OR NON-EXISTENT DOCUMENTS

Because Defendants' waiver theory contradicts decades of work-product jurisprudence and would destabilize ordinary litigation practice, their citations are necessarily misapplied, and none supports compelling internal drafting thoughts or non-existent documents. Defendants' authorities do not support their request to compel Plaintiff's internal drafting iterations, thought process, or ChatGPT composition. Their citations (i) conflate relevance with existence, (ii) improperly extend the waiver doctrine far beyond its limits, and (iii) ignore that courts in this District presuppose that pro se litigants may invoke opinion work-product protection when drafting litigation submissions. Most critically, no cited case orders the production of what Defendants seek here: a litigant's internal mental impressions reformatted through software.

Not one case cited by Defendants compels production of opinion work product reflecting how a litigant thought about, structured, or word-crafted her filings. Courts consistently safeguard drafting process whether expressed through handwritten notes, redlines, track-changes, outline software, or ChatGPT, because the format does not negate the mental-impression core of work product protection. Defendants' request is unprecedented.

Defendants cite the "low bar" for relevance while ignoring Rule 26(b)(1)'s coequal proportionality requirement. Relevance does not override proportionality, and proportionality does not permit compelled exposure of a party's internal drafting process or reconstruction of non-existent documents. The relevance inquiry ends where the existence of tangible, withheld materials ends.

The Supreme Court has made clear that the work-product doctrine exists to protect the "mental processes" involved in litigation preparation. *United States v. Nobles*, 422 U.S. 225, 238–39 (1975). That protection extends to preparatory drafting itself and does not turn on the medium used to express those thoughts. No authority cited by Defendants suggests that changing the drafting tool alters the scope of work-product protection.

Binding Eastern District of Michigan authority undermines Defendants' position and presupposes the availability of work-product protection to pro se litigants. In *Coles v. Dearborn Midwest Co.*, No. 13-14450, 2014 U.S. Dist. LEXIS 180552, at *6 (E.D. Mich. Sept. 17, 2014), the court denied protection only because the materials were not prepared in anticipation of litigation—implicitly recognizing the doctrine's applicability where that requirement is met. Plaintiff's AI-assisted drafting was undertaken solely to prepare litigation filings, squarely within that framework. Likewise, *Dassault Systèmes, SA v. Childress*, No. 09-10534, 2013 U.S. Dist. LEXIS 202983, at *3–4 (E.D. Mich. Nov. 22, 2013),

required a privilege log only where existing documents were withheld. Defendants

identify no such documents here, eliminating any logging obligation.

Defendants' reliance on *Schanfield, 258 F.R.D. at 214.* is misplaced.

*Schanfield*, 258 F.R.D. at 214, involved actual disclosure of work product to

adversary-adjacent individuals, one of whom transmitted the materials to defense

counsel, destroying confidentiality. No such disclosure occurred here. Plaintiff

used a private, password-protected drafting interface solely for internal

preparation. Defendants identify no recipient, no transmission, and no increased

likelihood of adversarial access.

Defendants' out-of-district authorities are likewise unavailing. *Harrison v.

Whole Foods Market, Inc.* is non-binding and fact-specific, addressing efforts to

shield factual material rather than opinion work product. *Morgan v. AMISUB

(SFH) Inc.*, No. 18-cv-2042-TLP-tmp, 2020 U.S. Dist. LEXIS 131330, at *6 (W.D.

Tenn. July 24, 2020), concerns attorney-client privilege, not work product, and is

therefore inapposite. Plaintiff's objections rest exclusively on the work-product

doctrine; she has not asserted attorney-client privilege or claimed that any software

tool functioned as counsel.

Finally, Defendants' reliance on secondary commentary underscores the

absence of binding authority. Advisory opinion pieces from Law360 cannot

substitute for governing law, and their citation confirms the lack of precedent

compelling disclosure of a litigant's internal drafting process based on software assistance.

## VIII. PLAINTIFF COMPLIED WITH MEDICAL DISCOVERY; SANCTIONS ARE UNWARRANTED

Defendants' motion seeks information beyond the scope permitted under Rule 26(b)(1) and stands outside Judge Patti's proportionality requirements.

Discovery is closed. Attempts to retroactively broaden its scope through sanctions should be denied. Rule 37(b) sanctions require violation of a specific court order compelling discovery, a prerequisite absent here. The same procedural deficiencies that prompted the Court's reminder also foreclose sanctions, which cannot issue absent a violated discovery order. Defendants' motion instead seeks sanctions for a mere disagreement over the scope of discovery, a tactic the Rules do not permit.

Plaintiff fulfilled her medical discovery obligations. On March 17, 2025, Plaintiff executed and provided a limited, HIPAA-compliant authorization narrowly tailored to the medical conditions placed at issue, hypertension, anxiety, and work-related emotional distress, and instructed her former counsel to transmit it to Defendants. That execution satisfied Plaintiff's obligation.

The Federal Rules do not require a party to repeatedly re-execute or re-provide the same authorization absent a court order. Defendants themselves have expressly acknowledged this principle. In a September 3, 2025, email, Defendants'

counsel confirmed that "reproducing all of the same discovery responses a second time is not an obligation" and that doing so would be "a courtesy," not a requirement under the Rules, further stating that Plaintiff's decision to proceed pro se "does not change that." **(Exhibit F)**

Moreover, Plaintiff has made her relevant medical history transparent to the Court and Defendants by filing, on the docket, detailed letters from her treating providers. *See* Letter from Lemica S. Cox, LMSW (ECF No. 57-1); Letter from Dr. Shazia Qamar, MD (ECF No. 37-1); Letter from Maria Yoo, MSW (ECF No. 37-2). These documents confirm the diagnoses, course of treatment, and causal connection to this litigation that form the basis of her damages claim.

Defendants' portrayal of a "refusal" is a mischaracterization. Any failure in the transmission of the executed authorization lies outside Plaintiff's control and cannot be attributed to her for purposes of sanctions. See *In re O'Brien*, 351 F.3d 832, 839 (8th Cir. 2003) (sanctions should not be imposed on a party for failures attributable to counsel rather than the client).

At her deposition, Plaintiff clearly explained that she had provided proportional medical discovery and that broader authorizations were unwarranted. Defendants did not seek a court order to resolve this scope dispute during the discovery period. Their current motion, filed weeks after discovery closed, seeks to punish Plaintiff for a disagreement they never timely presented to the Court.

Therefore, Defendants' motion to compel medical authorizations is moot, unnecessary, and unduly burdensome, and their request for sanctions under Rule 37(b) must be denied. Plaintiff's conduct was substantially justified. Defendants' pursuit of this issue, despite possession of the core medical evidence, exemplifies a pattern of bad-faith litigation tactics that lacks a proper procedural or substantive basis.

## IX. DEFENDANTS' REQUEST FOR SANCTIONS UNDER RULE 37 FAILS AS A MATTER OF LAW AND FACT

Rule 37 sanctions require a violated discovery obligation or court order, neither of which exists here. Plaintiff timely complied with discovery, asserted recognized privileges in good faith, and no order has ever required production of the protected opinion work product Defendants seek. The absence of a violated order is dispositive under Rule 37(b).

By contrast, Defendants remain materially noncompliant with compelled discovery under the Court's orders (ECF Nos. 56 & 66). Outstanding deficiencies include, but are not limited to: (1) factual HR investigative materials relating to Plaintiff's internal complaints, including findings, interview notes, manuals, and supporting documentation; (2) deficient privilege logs that improperly lump entire HR investigations without segregating non-privileged factual material, despite Defendants' reliance on those investigations as defenses; (3) an incomplete and unusable 5,000-plus page Bates-stamped bulk PDF/native ESI production lacking

custodian identification, search-term hit counts, and usable metadata; (4) comparator personnel records that are materially less complete than Plaintiff's personnel file, including missing job descriptions, compensation data, and supervisory decision-making materials for individuals who assumed Plaintiff's duties; and (5) source records underlying Defendants' asserted justification for comparator justifications. Plaintiff has repeatedly sought completion of these materials, and Defendants have never represented that their production is complete.

Defendants' sanctions request is therefore a transparent attempt to divert attention from their own non-compliance by manufacturing a collateral dispute over Plaintiff's protected internal drafting activity, in violation of Rules 16(b)(4), 26(b)(1) and (3), 37(b), and Local Rule 7.1. Discovery exists to obtain evidence, not to probe an opponent's mental impressions or litigation strategy or to engage in gamesmanship with a pro se litigant. The Federal Rules do not permit parties to redirect judicial attention from their own discovery failures by targeting the opposing party's most protected work product.

Because Defendants identify no violation of any court order, no withheld discoverable material, and no sanctionable conduct, while themselves violating the rules governing discovery motions, their Rule 37 request fails as a matter of law.

## X. CONCLUSION

Defendants' Motion to Compel was filed after the close of discovery and violates the Scheduling Order. It seeks relief without satisfying Rule 16(b)(4)'s good-cause requirement or Rule 37's procedural prerequisites, bypasses required conferral and joint-presentation procedures, and identifies no existing, undisclosed responsive documents subject to compulsion.

Substantively, Defendants seek access to Plaintiff's mental impressions and drafting process, materials protected as opinion work product under Rule 26(b)(3). The Federal Rules do not render internal drafting discoverable or permit sanctions based on a discovery-scope dispute. Plaintiff satisfied her discovery obligations, and Defendants show no prejudice.

Plaintiff satisfied her medical discovery obligations; duplicative production is not required absent a court order, and provider letters are already on the docket.

Each of these defects independently requires denial. Taken together, they confirm that Defendants' motion is an improper attempt to reopen discovery and divert attention from the evidence bearing on liability, retaliation, and damages, namely, Defendants' conduct, comparator treatment, HR investigations, performance evaluations, and termination decision-making.

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Compel and Motion for Sanctions in their entirety and permit this case to proceed on the merits based on properly discoverable evidence.

**Respectfully submitted,**

/s/ Sohyon Warner

Sohyon Warner, Plaintiff, in Pro Se

2841 Lamplighter Lane

Bloomfield Hills, MI 48304

sohyon.warner@gmail.com

248.210.5504

Dated: January 6, 2026