UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOHYON WARNER,

      Plaintiff,

v.

GILBARCO, INC., *et al*.,

      Defendants.

_____/

Case No. 2:24-cv-12333

District Judge Gershwin A. Drain
Magistrate Judge Anthony P. Patti

## MEMORANDUM ORDER DENYING PLAINTIFF'S MOTION TO QUASH FED. R. CIV. P. 45 SUBPOENAS OR FOR PROTECTIVE ORDER, AND FOR SANCTIONS (ECF No. 96)

Currently pending before the Court is Plaintiff's February 22, 2026 motion to quash Fed. R. Civ. P. 45 subpoenas or for protective order, and for sanctions (ECF No. 96), as to which Defendants have filed a response (ECF No. 100), and Plaintiff has filed a reply (ECF No. 104).  On March 16, 2026, in response to the Court's March 13, 2026 text-only order, Defendants filed excerpts of Plaintiff's deposition transcript.  (ECF No. 107.)

Judge Drain has referred this motion to me for hearing and determination. (ECF No. 98.)  Upon consideration of the motion papers, Plaintiff's motion (ECF No. 96) is **DENIED**.

Plaintiff's motion seems to be oblivious to the Court's February 5, 2026 bench ruling, as captured in its February 10, 2026 order, in which the Court stated:

1

> To the extent Defendants ask the Court to compel Plaintiff "to execute HIPAA-compliant medical authorizations for the medical and mental-health providers Plaintiff identified in her deposition[,]" this request is **GRANTED**.  *Notwithstanding the untimeliness of this motion, pursuant to the Court's broad authority under Fed. R. Civ. P. 1 and Fed. R. Civ. P. 16(a)(2) & (d)*, Plaintiff is required to produce signed HIPPA releases for Therapists Maria Yoo and Lemica Cox, and Dr. Shazia Qumar (*see* ECF No. 80, PageID.818; ECF No. 80-2, PageID.840 [pp. 23-24]) no later than **Thursday, February 12, 2026**.  While Plaintiff claims that her prior attorney obtained these releases from her and would have given them to defense counsel, defense counsel represented that he did not receive them. *Even a minimal amount of cooperation on Plaintiff's part could have avoided this portion of Defendants' motion to compel.*

(ECF No. 94, PageID.1021 (bold-facing in original; italics added).)

Plaintiff continues not to cooperate.  In her apparent effort to severely and unilaterally circumscribe the scope of discovery into her alleged damages, Plaintiff spends a good number of pages briefing (in her motion and again in her reply) the issue of Defendants' "untimely" request for her medical and therapy information. But the request was first made well within the discovery period, and, despite Plaintiff's claim that her previous attorney produced the HIPAA compliant record releases, Defendants have consistently maintained that they did not receive them. (*See* Dep. Trans. at 19, 131; ECF No. 80-2, PageID.839, 867.)  Also, the Court recognized that Plaintiff could and should have signed another set of releases much earlier, rather than giving Defendants the run-around and making them file a motion to obtain them.  In fact, she was offered the opportunity to sign the releases at her November 25, 2025 deposition, approximately ten days before the close of

2

discovery, but gave excuses for needing more time.  (Dep. Trans. at 130-131; ECF No. 80-2, PageID.867; *see also*, ECF No. 41, PageID.257.)  At the February 5, 2026 hearing on Defendants' December 23, 2025 motion to compel (ECF No. 80), Plaintiff identified no good reason for failing to do so, when pointedly asked. Hence, the Court used its broad power to manage discovery by ordering her to sign the releases outside of the discovery period.  And so, Plaintiff finally signed the releases – in a unilaterally circumscribed form – on February 12, 2026, two-and-a-half months after her deposition and perhaps as much as a year after her original counsel was asked for them.  (Dep Trans. at 131; ECF No. 107-1, PageID.1894; *see also* ECF Nos. 96-2, 96-3 & 96-4.)  Defendant gave notice of its intent to subpoena the records six days later.  (ECF No. 96-1, PageID.1353-1354.) Plaintiff's argument that Defendant should now be prohibited from obtaining the very records for which the Court ordered her to provide releases because discovery has closed is incorrect at best, and in bad faith, at worst.  Defendants are correct in pointing out that they "were not asking the Court to compel Plaintiff to execute authorizations just so they could be retained on file."  (ECF No. 100, PageID.1380.)  Nor was the Court ordering it for that illogical purpose.

Moreover, the Court's order <u>did not authorize Plaintiff to arbitrarily limit the scope of those releases</u>.  Notwithstanding Plaintiff's argument that she only seeks "garden variety" damages, her operative pleading alleges that she "has *and will*

*continue* to suffer mental anguish, humiliation, *physical injury*, embarrassment and

*emotional distress* resulting from the retaliatory conduct of the Defendants as

well." (ECF No. 7, PageID.40 (emphases added).)[1]  And, in her deposition, she

testified that:  (1) one of the doctors identified in my prior order[2] treated her for

"anxiety and [a] heart condition" and prescribed medication for the same (Dep.

Trans. at 23-26; ECF No.107-1, PageID.1890-1892); (2) she is also being treated

by this same doctor for hypertension (Dep. Trans. at 130; ECF No. 107-1,

PageID.1894); (3) she has treated with either therapists Cox or Yoo since 2024 for

major depression, anxiety, and adjustment disorder and has a worsening condition

(Dep. Trans. at 125-128; ECF No. 107-1, PageID.1892-1893); (4) she has "no

---

[1] Plaintiff's first amended complaint (ECF No. 7) is the operative pleading. Although she sought and was granted leave to file a second amended complaint for the purpose of adding Defendant Vontier as a party, but not for purposes of adding additional claims (ECF Nos. 43 & 78), she did not file one, as far as the Court can tell from the docket.  However, even her proposed second amended complaint would have alleged that she suffered "emotional distress, and aggravated health conditions" (ECF No. 43-1, PageID.280, ¶ 50, and *passim*) and that she "was a qualified individual with a disability, diagnosed with hypertension, adjustment disorder, depression, and anxiety" for which she requested accommodation (*id*., PageID.286, ¶ 79).  She also alleged that, "[f]ollowing her termination, Plaintiff was formally diagnosed with adjustment disorder, anxiety, and major depressive disorder, and is currently under evaluation for complex post-traumatic stress disorder (CPTSD).  Defendants' conduct directly exacerbated these conditions." (*Id*., PageID.276, ¶ 39.)

[2] My order spells the name as Dr. Qumar, as spelled for me on the record, but the deposition transcript spells it as Dr. Qamar; obviously, it is the same person.

problem providing you whatever my diagnosis is[,]" in response to which defense counsel pointed out that "we have been waiting for these [releases] for almost a year now" (Dep. Trans. at 129, 131; ECF No. 107-1, PageID.1893, 1894; *see also*, Dep. Trans. at 19-22; ECF No. 80-2, PageID.839)[3]; and, (5) she asked her manager to put her somewhere safe because she was "scared for my life because I was having concerns and I'm having physical symptoms at the time" that were not about physical safety, but rather, "[p]sychological, and of course psychological [can] have an effect on my heart rate."  (Dep. Trans. at 242-243; ECF No. 107-1, PageID.1896).  These can hardly be described as garden variety damages, but, in any case, her allegations of emotional distress alone, including for future damages, were enough to make the records at issue here discoverable.  *Maday v. Public Libraries of Saginaw*, 480 F.3d 815, 821 (6th Cir. 2007) ("But when Maday put her emotional state at issue in the case, she waived any such privilege….")  Courts are not bound by a plaintiff's use of the "garden variety" label but, rather, may look beyond the litigant's own characterization of their damages.  *Kubik v. Central Mich. Univ. Bd. of Trustees*, No. 15-cv-12055, 2016 WL 9631633, at *4 (E.D. Mich. Mar. 17, 2016) (citing *Equal Employment Opportunity Comm'n v. Sheffield*

---

[3] Indeed, Plaintiff testified that she was willing to sign releases, although she refused to look at them during a break in her deposition (despite the presence of her limited appearance counsel) and hinted that she would be limiting them or that "letters from my health provider" would suffice, despite being warned that she would be facing a motion to compel. (*Id*.)

*Fin., LLC*, No. 1:06CV00889, 2007 WL 1726560, at *4 (M.D.N.C. June 13, 2007)).  Additionally, as cited above, Plaintiff *testified* about the conditions in question, including her diagnoses and treatment, at one point stating, "I have no problem providing you whatever my diagnosis is."  (Dep. Trans. at 129: ECF No. 107-1, PageID.1893; and *see generally* ECF No. 107-1, PageID.1890-1894, 1896.)  As such, she has waived whatever privilege might have applied; she may not now prevent Defendants from verifying or discounting this testimony through a record review.  Finally, Defendants cannot be expected to ignore the representation made in Plaintiff's proposed second amended complaint that the termination of Plaintiff's employment "directly exacerbated" her diagnoses of adjustment disorder, anxiety, and major depressive disorder, and possibly CPTSD.  (ECF No. 43-1, PageID.276, ¶ 39.)

Furthermore, Plaintiff's argument that her medical and psychological / therapy records should be limited to the period of her employment, or, in the case of her hypertension allegation, from August 2022 forward (when she claims it was first diagnosed) is rejected.  (ECF No. 104, PageID.1861.)  Defendants do not have to take Plaintiff's word for when these conditions first surfaced.  Nor do they have to take her word for cause and effect.  Defendants are entitled to explore whether these conditions were of longer standing than Plaintiff admits and to compare Plaintiff's condition before and after the alleged detrimental employment actions.

If Plaintiff turns out to have had a long history of the condition she claims her employers caused her to suffer, *e.g.*, anxiety, Defendants may be able to establish that the condition had another origin, or that the condition was a longstanding one, or that it was no worse after Defendants' actions than it had been before, or that it improved.  Put another way, a "look-back period" enables a party accused of causing injury to establish a longitudinal baseline against which to compare the plaintiff's condition before and after the alleged causal event or behavior.  On top of the timing of her alleged conditions, Defendants are entitled to explore the causes of the symptoms and manifestations that she attributes to Defendants' actions.  For example, it is fair for Defendants to explore whether CPTSD, anxiety, or depression could have been caused or triggered by a trauma *preceding* her employment with Defendants, or whether the debilitating conditions of which she complains might have been caused by the interaction or side effects of medications prescribed for *other conditions* that she does not attribute to her employment.

Finally, a word on an argument made in Plaintiff's reply.  Plaintiff states in a boldfaced topic heading that Defendants' motion for summary judgment "admits the record is complete, yet they seek more discovery." (ECF No.104, PageID.1859.)  The Court seems to recall that this was clarified at the most recent hearing; regardless, the Court can fully appreciate that the record may be complete *for purposes of defeating liability* without being complete as to damages, should

7

the case survive dispositive motion practice and head to trial.  There was no misrepresentation by Defendants on this point.

Accordingly:  (1) the subpoenas at issue **WILL NOT BE QUASHED**; (2) Plaintiff **MUST SIGN AND PROVIDE TO DEFENDANTS' COUNSEL YET ANOTHER SET** of the releases at issue, **on or before March 30, 2026**, as previously ordered for "Therapists Maria Yoo and Lemica Cox, and Dr. Shazia Qumar" (ECF No. 94, PageID.1021), but this time *without the limiting language* Plaintiff self-inserted in boldfaced type on each of the releases *or any other limiting language* (*see* ECF Nos. 96-2 through 96-4), the Court agreeing with Defendants' request that the subpoenas to these providers should be without "limitations other than that the records be treated confidentially pursuant to the Protective Order (ECF No. 21)" (ECF No. 100, PageID.1392); and, **(3)** Defendants may serve subpoenas upon the above-identified providers with the newly signed releases anytime before the final pretrial conference.

Having concluded that Plaintiff is not entitled to having the subpoenas at issue quashed or to entry of a related protective order (*see* ECF No. 96, PageID.1349-1350 ¶¶ 1, 2), her related requests for an award of costs and expenses or for the imposition of monetary sanctions (*see id*., ¶¶ 4, 5) are **DENIED**.  As for Defendants' responsive assertion that they "should be awarded their costs and fees in having to respond[,]" (*see* ECF No. 100, PageID.1391-1392), Plaintiff is

8

fortunate that defense counsel did not press this issue in the prayer for relief, although Defendants may renew this request should Plaintiff fail to comply with this order or in response to any objection Plaintiff may file to this order.

**PLAINTIFF IS HEREBY CAUTIONED THAT FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN SANCTIONS UNDER FED. R. CIV. P. 37(b) ("Failure to Comply with a Court Order."), which include dismissal of "the action or proceeding in whole or in part[.]"  Fed. R. Civ. P. 37(b)(2)(A)(v).**

**IT IS SO ORDERED.**[4]

Dated:  March 23, 2026

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

---

[4] The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).