**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SOHYON WARNER,

                Plaintiff,

                          Case No. 24-cv-12333

v.

GILBARCO, INC., GILBARCO, INC.            Hon. Gershwin A. Drain
(d/b/a GILBARCO VEEDER-ROOT) and    Mag. Judge Anthony P. Patti
VONTIER CORPORATION


                Defendants.

---

| | |
|---|---|
| Sohyon Warner | Richard W. Warren (P63123) |
| Plaintiff, *Pro Se* | Lauren D. Harrington (P85545) |
| 2841 Lamplighter Lane | OGLETREE DEAKINS, PLLC |
| Bloomfield Hills, MI 48304 | *Attorneys for Defendants* |
| Sohyon.warner@gmail.com | 34977 Woodward Avenue, Ste. 300 |
| 248-210-5504 | Birmingham, MI 48009 |
| | 248-593-6400 |
| | richard.warren@ogletree.com |
| | lauren.harrington@ogletree.com |

---

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**I.   PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION.**

   **1.   *Plaintiff's Reassignments Were Not Adverse Employment Actions.***

Plaintiff's Opposition devotes significant space to erroneously characterizing her various reassignments as adverse employment actions, when the facts establish that this is false. Plaintiff admitted in her deposition that no reassignment changed her pay, benefits, title, work hours, or work location. (ECF No. 95-3, PageID. 1174, Plaintiff's Dep., pg. 206:4-207:7)**.** She worked remotely throughout her employment and always served in a project management capacity. (Id.) The law is clear: "[R]eassignments without changes in salary, benefits, title, or work hours…do not constitute adverse employment actions." *Mensah v. Caruso*, No. 10-13233, 2014 U.S. Dist. LEXIS 2940, at *12 (E.D. Mich. Jan. 10, 2014).

Plaintiff also erroneously attempts to recast her reassignments as "structural removal" and "role stripping." The evidence, however, actually shows that Plaintiff's first reassignment in May 2022 occurred after Plaintiff herself complained about working with Blaser and agreed that reassignment was best. (ECF No. 95-6). Plaintiff's move to Vontier was facilitated at her own request to pursue data and analytics work that interested her, and the Vontier team expressed enthusiasm about having Plaintiff join. (ECF No. 95-9). Plaintiff's return to Gilbarco in October 2022 similarly followed Plaintiff's own request to leave Ayma's team. (ECF No. 95-15, PageID. 1271, 1275). In each instance, Defendants accommodated Plaintiff's preferences, establishing that none were adverse employment actions.

To the extent Plaintiff contends that certain projects were less desirable or had "lower visibility," her subjective impressions are irrelevant. "An employee's subjective impressions

as to the desirability of one position over another are not relevant in determining whether the employee suffered an adverse employment action." *Momah v. Dominguez*, 239 F. App'x 114, 123 (6th Cir. 2007). Accordingly, the only potential adverse action at issue remains Plaintiff's termination.

### 2. Plaintiff Has Not Identified Similarly-Situated, Valid Comparators.

Plaintiff's Opposition identifies seven alleged comparators, claiming they constitute "every relevant employee" in the Data & Analytics and PMO departments. But the Sixth Circuit requires that comparators be "similar in all relevant respects" and have "engaged in acts of comparable seriousness." *Bates v. Gen. Motors, Inc.*, No. 23-11071, 2024 WL 4507353, at *9 (E.D. Mich. Oct. 16, 2024). Simply listing employees who worked in related departments and noting their race, gender, and age does not satisfy this standard.

None of Plaintiff's proposed comparators engaged in conduct remotely comparable to Plaintiff's. There is no evidence in the record that any repeatedly refused to attend meetings with their supervisors, refused assigned projects, ignored clear warnings of discipline, or engaged in a pattern of hostility and insubordination like Plaintiff. Blaser was a director-level employee who participated in hiring Plaintiff and led teams she worked on. McClellan was a contract employee later hired full-time, not promoted. Furey and Cates held different positions with different responsibilities and performance records. Plaintiff admitted during her deposition that she has no knowledge of why these individuals were allegedly treated differently and no basis other than her own speculation. (ECF No. 95-3, PageID. 1194,

2

289:15-25). Plaintiff's assertion that she was paid less than "every known comparator" is similarly unsupported (nor did she plead an Equal Pay Act claim). There is no admissible evidence establishing that any of these individuals performed the same work, had the same experience level, or were otherwise similarly situated for purposes of a pay comparison. Plaintiff's comparator chart (ECF No. 110, PageID.1949-1950) compares individuals across different titles, roles, and levels of responsibility, which is precisely the type of broad, generalized comparison the Sixth Circuit has rejected.

### 3. *Plaintiff Was Not Replaced By A Person Outside Her Protected Class.*

Plaintiff continues to argue that McClellan "replaced" her, but the undisputed evidence shows otherwise. McClellan and Plaintiff switched projects in May 2022 only after Plaintiff complained about working with Blaser. (ECF No. 95-7, PageID. 1223). McClellan was the logical choice because he had already worked on the Core Data Lake project and had experience with the team. (Id.) After Plaintiff's termination, her responsibilities were absorbed by existing team members; no one was hired to replace her. (ECF No. 95-4, PageID. 1210, pp. 22). Under Sixth Circuit law, "a person is not considered replaced when his/her duties are absorbed by another person or when the work is redistributed among other existing employees already performing related work." *Wingo v. Mich. Bell Tel. Co.*, No. 16-cv-12209, at *30 (E.D. Mich. Jan. 2, 2019).

## II.  PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION.
### 1. *Temporal Proximity Alone Is Insufficient.*

Plaintiff's retaliation claim rests entirely on the temporal proximity between her complaints and termination. Plaintiff admitted during her deposition that she relies solely on timing and has no other personal knowledge regarding why Defendants terminated her. (ECF No. 95-3, PageID.1184, Plaintiff's Dep., pg. 247:7-22). But "[t]emporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000).

Critically, the timeline actually undermines Plaintiff's theory. Plaintiff began making complaints as early as October 2022, yet Defendants did not terminate her until six months later, in March 2023. During those intervening months, Defendants continued to assign Plaintiff projects, continued to try to meet with her, and continued to accommodate her requests for reassignment. If Defendants were motivated by a desire to retaliate against Plaintiff for her complaints, they would have done so months earlier. The termination only occurred after Plaintiff refused to attend multiple meetings, would not perform assigned work, and failed to follow directives in February and March 2023—conduct that would warrant termination of any employee regardless of any protected activity.

### 2. Plaintiff's Alleged "Direct Evidence" Is Neither Direct Nor Evidence Of Retaliatory Animus.

Plaintiff points to several email excerpts as purported "direct evidence" of retaliatory animus, but none withstand scrutiny. First, the "avoid another Speak Up" email. (ECF No. 110-2, PageID.1963). Plaintiff misrepresents this email without full context that clearly shows Hurst was only interested in resolving the issues that were provoking Plaintiff to file reports in

the first place. An employer's awareness of prior complaints and desire to handle personnel matters carefully does not constitute evidence of retaliation. To the contrary, it reflects an employer's effort to manage a difficult situation with sensitivity to the employee's concerns. *Finley v. Higbee Co.*, Case No. 1:97-cv-2809, 1998 U.S. Dist. LEXIS 21010, at *21 (N.D. Ohio Dec. 18, 1998) (discussing how an employer's good faith response to an employee's complaint avoids liability for retaliation).

Second, the "#stopscandohate" comment. (ECF No. 110-2, PageID.1983). Plaintiff characterizes this as mockery of her discrimination allegations, but this isolated remark by one individual—even if inappropriate—does not constitute direct evidence that Plaintiff's termination was motivated by retaliation. An offhand comment does not rise to the level of direct evidence of discriminatory or retaliatory intent sufficient to overcome the overwhelming evidence of Plaintiff's insubordination. Moreover, Plaintiff has not established that this individual was a decision-maker with respect to her termination, and it therefore is not direct evidence. *Trapp v. Fedex Corp*, 643 F.Supp.3d 769, 777 (ED Mich. 2022).

Third, the "sneaky" comment. This characterization was made in the context of Plaintiff's attempt to enroll in a program without authorization and does not reflect animus based on any protected characteristic or protected activity, nor does it relate to her termination.

None of these remarks, individually or collectively, constitute direct evidence that would permit a jury to conclude that retaliation was the "but-for" cause of Plaintiff's

termination. *Bates v. Gen. Motors, Inc.*, No. 23-11071, 2024 WL 4507353, at *8 (E.D. Mich. Oct. 16, 2024), *aff'd sub nom. Bates v. Gen. Motors, LLC*, No. 24-2004, 2025 WL 4061880 (6th Cir. May 28, 2025) ("with direct evidence, no inferences are permitted. The evidence must require the conclusion that unlawful discrimination was at least a motivating factor without any inferences. Here, inferences would be required to somehow connect Van Vliet's "it's black and white" comment to a discriminatory animus.") At most, they are stray remarks that are insufficient to overcome summary judgment when considered against the extensive documentation of Plaintiff's performance problems and extreme insubordination.

## III. DEFENDANTS' LEGITIMATE, NONDISCRIMINATORY REASONS ARE NOT PRETEXTUAL.

Even assuming Plaintiff could establish a *prima facie* case—and she cannot—she has not shown pretext. To establish pretext, Plaintiff must show that Defendants' stated reason "(1) has no basis in fact; (2) did not actually motivate Plaintiff's termination; or (3) was insufficient to warrant Plaintiff's termination." *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 502 (6th Cir. 2007).

First, Defendants' reasons have ample basis in fact. The record contains voluminous contemporaneous emails documenting Plaintiff's performance issues across every team and supervisor she worked with during her 15-month employment. Multiple individuals of diverse backgrounds independently reported difficulty working with Plaintiff. In the final weeks of her employment, Plaintiff refused to attend multiple meetings scheduled by Blaser, refused the One Jira project assignment, and ignored clear warnings that continued refusal would lead to

termination. Plaintiff's contention that Defendants' performance narrative lacks a factual basis because of HR Heuser's comment that there was "not much that I can find on the 'why' in writing" is unavailing. (ECF No. 110-2, PageID.1968). This comment pertained to: (a) whether management discussed with Plaintiff the basis for one of her reassignments, verbally or in writing; and (b) the documentation for one particular reassignment decision, not Plaintiff's overall performance record. Plaintiff cannot extrapolate from one HR email a general absence of documentation when the record is replete with contemporaneous communications reflecting concerns about Plaintiff's conduct from numerous individuals.

Second, the sequence of events proves that Plaintiff's misconduct—not her complaints—actually motivated the termination. Plaintiff made numerous complaints over a period of months, and Defendants did not take adverse action. Defendants continued trying to work with Plaintiff, reassigned her to teams where she might succeed, and provided her with meaningful projects. Plaintiff cannot identify any other employee who received such favorable treatment in the face of such poor behavior. The termination occurred only after Plaintiff's conduct evolved into outright refusal to perform any work or meet with any supervisor. The fact that Defendants tolerated Plaintiff's complaints for months while continuing to employ her and offer her opportunities belies any inference of retaliatory motive. *See Mittman v. City of Toledo*, No. 97-3817, 1998 U.S. App. LEXIS 17656, at *16 (6th Cir. July 28, 1998) (finding summary judgment for Defendant where Plaintiff had a long history of filing employment-related charges, complaints, and grievances, because "the City's and his

7

supervisor's tolerance in these instances demonstrates a willingness to retain employees who engage in protected activity, not a propensity to retaliate against them.")

Third, Plaintiff's conduct was plainly sufficient to warrant termination. Courts have consistently upheld terminations where employees refuse to perform assigned tasks or attend meetings. *See Matthews v. City of Maple Heights*, No. 92-3738, 1993 U.S. App. LEXIS 28625, at *1 (6th Cir. Nov. 1, 1993); *Smith v. Blick Clinic*, No. 96-3246, 1997 U.S. App. LEXIS 17185, at *13 (6th Cir. July 3, 1997). No employee, regardless of protected status, can refuse to attend meetings, refuse assigned work, and refuse to follow management directives, and expect to remain employed.

## IV.    PLAINTIFF'S UN-PLEADED CLAIMS SHOULD BE DISREGARDED.

Plaintiff's Opposition raises several claims and theories that were not asserted in her First Amended Complaint, including claims for failure to accommodate under the ADA, hostile work environment, and age discrimination. Plaintiff cannot amend her Complaint through an opposition brief to a motion for summary judgment. These un-pleaded claims are not properly before the Court and should not be considered. *See Tucker v. Union of Needletrades, Indus., & Textile Emples.*, 407 F.3d 784, 788 (6th Cir. 2005) ("Once a case has progressed to the summary judgment stage… a plaintiff could not raise a new claim in response to a summary judgment motion") (internal quotations and citations omitted).

Even if the Court were to consider Plaintiff's un-pleaded claims, they also fail. Plaintiff's characterization of her meeting refusals as "accommodation requests" is a post-hoc

8

recharacterization of insubordination. The record shows that Plaintiff refused (remote) meetings and refused work assignments, and then later re-framed those refusals as medical necessity. The ADA does not require an employer to excuse an employee from core job functions—including attending meetings with supervisors—simply because the employee claims a medical condition. *See Parsons v. Auto Club Grp.*, No. 12-10907, 2013 U.S. Dist. LEXIS 122259, at *16 (E.D. Mich. Aug. 28, 2013) ("even assuming Plaintiff's statements made at the interview could be construed as requests for accommodation—which the Court has already rejected—ACG had no obligation to consider such requests when Plaintiff's misconduct, *i.e.*, integrity issues, was the basis of the investigative interview, suspension, and ultimate termination. Plaintiff cannot now use the ADA to avoid accountability for his actions."); *Lottinger v. Shell Oil Co.*, 143 F.Supp.2d 743, 758 (S.D. Tex. 2001) ("Thus, the ADA does not insulate an employee from adverse action taken by an employer because of misconduct in the workplace, even if his improper behavior is arguably attributable to an impairment.") Plaintiff never provided any documentation to support that her medical condition rendered her unable to attend remote meetings with her supervisors or only communicate by email.

Plaintiff's non-existent age discrimination claims under the ADEA and the ELCRA (if they were to exist) require proof that age was the "but-for" cause of the adverse employment action. *McNeal v. City of Blue Ash*, 117 F.4th 887, 894 (6th Cir. 2024). Meanwhile, Plaintiff offers nothing more than the observation that she is over 50 and that some terminated employees were over 40—a demographic coincidence that falls far short of establishing a

9

causal nexus between age and any adverse action. Notably, Plaintiff acknowledges that the individuals involved in hiring, managing, and terminating Plaintiff (Hurst and Blaser) were themselves members of the same age-protected class. Thus, there is no evidence in the record that anyone made any decision regarding Plaintiff's employment because of her age.

Lastly, Plaintiff's hostile work environment claim, to the extent it can be discerned from her Opposition, fails because Plaintiff has not identified conduct that was sufficiently severe or pervasive to alter the conditions of her employment on the basis of a protected characteristic. *Finley v. Higbee Co.*, Case No. 1:97-cv-2809, 1998 U.S. Dist. LEXIS 21010, at *23 (N.D. Ohio Dec. 18, 1998). The incidents Plaintiff identifies—reassignments she requested, investigations into her complaints, and supervisor attempts to schedule meetings—do not constitute harassment based on race, gender, national origin, or ethnicity.

## V.    PLAINTIFF'S RELIANCE ON *MUFLIHI* IS MISPLACED.

Plaintiff repeatedly cites *Muflihi v. U.S. Steel Corp.*, No. 22-cv-12609, 2024 WL 5172912 (E.D. Mich. Dec. 16, 2024) as controlling authority, but that case is factually distinguishable. Unlike the plaintiff in *Muflihi*, Plaintiff here has presented no evidence of overt discriminatory animus directed at her because of her race, gender, national origin, or ethnicity. There are no allegations that coworkers called Plaintiff slurs, mocked her culture or ethnicity, or subjected her to any conduct comparable to the sustained harassment in *Muflihi*. Plaintiff has no corroborating witnesses—she took no depositions during discovery—whereas the

*Muflihi* plaintiff had two coworker affidavits corroborating his claims of overwhelming and offensive harassment, based on firsthand observations.

Additionally, Defendants are not relying on the content of any privileged investigation to support their motion. In *Muflihi*, the employer's stated reason for termination was the plaintiff's alleged use of a racial slur—a reason that rested entirely on the adequacy of the investigation that uncovered the allegation. Here, Defendants' motion is based on the undisputed facts regarding Plaintiff's well-documented insubordination, performance failures, and refusal to perform basic job duties—facts established through voluminous contemporaneous emails and Plaintiff's own deposition testimony. Unlike in *Muflihi*, where the basis for termination depended on a flawed investigation, the basis for Plaintiff's termination here is independently established by undisputed record evidence showing that she refused to attend meetings, refused work assignments, and ignored clear warnings of discipline in the final weeks of her employment. The investigations are relevant only insofar as they demonstrate that Defendants took Plaintiff's complaints seriously and investigated them—which undermines, rather than supports, an inference of retaliatory motive. The Court's privilege ruling in this case does not create an inference that the investigations were flawed or that Defendants' reasons for termination are pretextual.

## VI.   THE SETTLEMENT OFFER AND SUBSEQUENT EMPLOYEE DEPARTURES ARE IRRELEVANT.

Plaintiff's inclusion of Defendants' prior settlement offer, and the fact that certain employees involved in her case are no longer with the Company, are neither relevant or

11

admissible. Settlement discussions are inadmissible under Federal Rule of Evidence 408. *See Korn, Womack, Stern & Assocs., Inc. v. Fireman's Fund Ins. Co.*, 27 F.3d 566 (6th Cir. 1994) ("disputes are often settled for reasons having nothing to do with the merits of a claim….") And Plaintiff has no evidence whatsoever that any employee left the Company for any reason related to her employment. If Plaintiff wanted to make a connection between certain employees' departure and her claims for discrimination and retaliation, she could have made timely efforts to depose them and inquire as to why they left. She did not do so, and her speculation is not admissible evidence. *Lewis v. Phillip Morris, Inc.*, 355 F.3d 515, 544 (6th Cir. 2024) (holding that a party may not avoid summary judgment by resorting to speculation, conjecture or fantasy").

## VII.    CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' opening Brief, Defendants respectfully request that this Court grant summary judgment on all of Plaintiff's claims and dismiss her Complaint in its entirety.

Dated: April 7, 2026

Respectfully submitted,

*/s/ Richard W. Warren*
Richard W. Warren (P63123)
OGLETREE, DEAKINS, PLLC
*Attorneys for Defendants*
34977 Woodward Ave., Suite 300
Birmingham, MI 48009
(248) 593-6400
richard.warren@ogletree.com

12

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(D)

Pursuant to Eastern District of Michigan Local Rule 7.1(d), I certify that this brief adheres to the page limitations set forth in Rule 7.1.

*/s/ Richard W. Warren*
*One of the Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

*/s /Richard W. Warren*
Richard W. Warren (P63123)
OGLETREE, DEAKINS, PLLC
*Attorneys for Defendants*
34977 Woodward Avenue, Suite 300
Birmingham, MI  48009
T: (248) 593-6400
richard.warren@ogletree.com