**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SOHYON WARNER,

                                                    Case No. 24-12333
                    Plaintiff,                      Hon. Gershwin A. Drain
v.                                                  Mag. Judge Anthony P. Patti

GILBARCO, INC., GILBARCO, INC. (d/b/a
GILBARCO VEEDER-ROOT) and
VONTIER CORPORATION,

                    Defendants.

---

### PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' UNTIMELY AND NON-COMPLIANT RESPONSE (ECF NO. 116)

Plaintiff, Sohyon Warner, proceeding pro se, respectfully moves this Court to strike, or, in the alternative, disregard, Defendants' Response (ECF No. 116). The Response was filed after the mandatory deadline, without any request for leave or showing of excusable neglect under Fed. R. Civ. P. 6(b). The filing is therefore procedurally defective and should not be considered.

Defendants' Response employs what Plaintiff refers to as a "Mirror Defense", a tactic that shifts focus from Defendants' procedural noncompliance to allegations

1

regarding Plaintiff. This approach does not address the governing Rule 72(a) standard and does not cure the filing's untimeliness.

## I. DEFENDANTS' FILING IS UNTIMELY AND PROCEDURALLY IMPROPER

Under Fed. R. Civ. P. 72(a) and E.D. Mich. LR 72.1(d), Defendants were required to file any response to Plaintiff's Objections within 14 days.

Plaintiff filed her Objections (ECF No. 112) on March 26, 2026. The mandatory deadline for Defendants' response was April 9, 2026. Defendants did not file ECF No. 116 until April 16, 2026, **seven (7) days after the deadline expired.**

Defendants did not:

- seek leave to file out of time;

- request an extension; or

- demonstrate excusable neglect under Fed. R. Civ. P. 6(b)(1)(B).

Absent such a showing, the Response is procedurally improper and may be **stricken or disregarded in its entirety**.

**A. Defendants' Selective Compliance Defeats Any Claim of Excusable Neglect**

The docket reflects that Defendants were fully capable of complying with deadlines when they chose to do so.

On April 16, 2026, Defendants timely filed their Response to Plaintiff's Motion to Strike (ECF No. 115), **seven days early**. By contrast, Defendants filed their

Response to Plaintiff's Rule 72(a) Objections (ECF No. 116) **seven days late**, without seeking leave or offering any explanation.

This selective compliance is legally significant. Defendants' ability to comply with one contemporaneous deadline, while missing another by seven days without explanation, a motion for leave, or any showing of diligence, underscores the absence of any legitimate reason for delay. Because the "reason for the delay" is the most critical factor in the excusable neglect analysis, this unexplained noncompliance weighs strongly against relief under Rule 6(b)(1)(B). The Supreme Court has explained that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect," and the Sixth Circuit has likewise emphasized that this factor is "critical" to the analysis. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392-395 (1993); *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006).

The record here reflects selective compliance rather than inadvertence.

## II. DEFENDANTS' PATTERN OF PROCEDURAL DEFIANCE CONFIRMS LACK OF EXCUSABLE NEGLECT

Defendants' untimely filing is not an isolated incident but part of a broader pattern of disregarding procedural requirements while attempting to expand the record or shift litigation posture. This 7-day variance is part of a broader pattern of procedural noncompliance reflected in the record. Defendants consistently disregard this Court's "Strict Adherence" Order (ECF No. 109) while

3

simultaneously projecting "non-compliance" onto the Plaintiff without a single supporting data point. The record reflects that:

- **Discovery Obstruction and Post-deadline filing:** Plaintiff was forced to move to compel to collect 90% of outstanding discoveries after Defendants' failure to provide complete discovery required motion practice to resolve outstanding issues. Conversely, Defendants filed their own Motion to Compel (ECF No. 80) 17 days after the deadline, focusing on peripheral "fishing expeditions" that the Court has already addressed.

- **Post-deadline discovery efforts after MSJ:** Defendants pursued additional discovery mechanisms after the discovery cutoff, necessitating motion practice and judicial rulings. (ECF No. 108). Defendants served subpoenas **74 days after the close of discovery and 7 days after the MSJ filing**. Despite Plaintiff already providing proportional HIPAA-compliant releases twice, the first to her former counsels in March 2025 and second directly to Defendants in February 2026, Defendants sought additional authorizations through subpoenas after Plaintiff had already provided medical releases, resulting in further motion practice.

- **Formatting Manipulation:** Defendants used non-standard formatting (Narrow fonts to fit 13-14 characters per inch and less than 1" border) in ECF No. 113 that increased page density beyond typical limits despite the

4

Court's page restrictions. They wanted a 14-page response (ECF No. 105).

These formatting choices circumvent the Court's page limitations.

At the same time, Defendants have demonstrated the ability to comply with deadlines when advantageous, as reflected in their timely filing of ECF No. 115.

This pattern is legally significant. Excusable neglect requires consideration of the movant's diligence and good faith, and repeated failures to comply with deadlines and rules may show the absence of excusable neglect. See *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006).

Accordingly, Defendants cannot satisfy the Rule 6(b) standard, and their untimely Response should be stricken or disregarded.

## III. DEFENDANTS' "MIRROR DEFENSE" IS NON-RESPONSIVE AND LEGALLY IRRELEVANT

Defendants' Response employs what Plaintiff refers to as a **"Mirror Defense"**, a tactic in which a party attempts to shift focus from its own procedural default and the merit of the case by directing the Court to allegations about the opposing party, here, a Pro Se.

Here, Defendants do not address their untimely filing or provide any justification under Rule 6(b). Instead, the Response focuses on Plaintiff's conduct and relitigates collateral issues.

5

These arguments are **non-responsive** to the dispositive issue of timeliness and do not cure Defendants' failure to comply with Rule 72(a) and Local Rule 72.1(d). Because Defendants offer no basis to excuse the late filing, the Court may disregard the Response without reaching its arguments.

**A. Defendants' Credibility Attacks Reflect the Same Non-Responsive Tactic**

Defendants' current arguments are consistent with prior efforts to shift focus from legal standards to Plaintiff's credibility as a pro se litigant.

As recorded in the **January 12, 2026, Status Conference**, Defendants attempted to discredit Plaintiff by claiming they have spent *"tens of thousands of dollars... on all of these motions..."* and suggesting Plaintiff lacks the *"guidance"* necessary to follow federal rules (Tr. 6:21-22). Defendants even attempted to characterize Plaintiff's work product as *"hallucinated"* (Tr. 7:5).

**Magistrate Judge Patti asked:** ***"Why does it matter that she's a pro se plaintiff?"***, **and then rejected counsel's generalizations, stating that** ***"pro se individuals"*** **come in different** ***"levels of competence"*** **and acknowledging Plaintiff's specific understanding of the law (Tr. 7:11-14).**

Defendants' present Response follows the same pattern, emphasizing unsupported allegations regarding Plaintiff's conduct and credibility rather than addressing the governing procedural requirements or the merits of the case. As before, these arguments do not bear on the issue before the Court and do not

address Defendants' failure to comply with Rule 72(a) or establish excusable

neglect under Rule 6(b).

## B. Defendants' Subpoena and Emotional Distress Arguments Are Similarly Non-Responsive

Defendants' arguments regarding medical subpoenas and emotional distress

likewise do not address the dispositive issue of timeliness.

These arguments seek to expand discovery and introduce merits-based disputes

beyond the scope of Rule 72(a) review. In addition, Defendants' request for

unrestricted medical access raises proportionality concerns under Fed. R. Civ. P.

26(b)(1), particularly where Plaintiff's claim is for garden-variety emotional

distress and narrower discovery mechanisms are available. Because Plaintiff is

seeking "garden variety" damages for humiliation, anxiety, and anger backed by a

record of events, broad medical access is neither relevant nor proportional to the

needs of this case.  Plaintiff has consistently demonstrated cooperation in

providing Defendants access to her medical history, but Plaintiff is asking for

proportionality to be strictly enforced.

Regardless, these arguments do not provide any justification for Defendants'

untimely filing and are therefore insufficient to warrant consideration of the

Response.

7

Plaintiff's arguments are grounded in the evidentiary record, while Defendants' Response focuses on collateral assertions. This divergence further demonstrates that the Response does not address the dispositive issue of timeliness.

### IV. EVEN IF CONSIDERED, DEFENDANTS' ARGUMENTS FAIL

Even if the Court were to consider Defendants' untimely Response, their arguments fail.

**A. Improper Reintroduction of AI Issues to attack Plaintiff's credibility**

Defendants again raise arguments concerning Plaintiff's use of AI-assisted drafting. This issue is not relevant to the present Rule 72(a) inquiry and does not bear on the timeliness of Defendants' filing. Defendants' obsession with Plaintiff's use of drafting tools attempts to create a credibility issue that is not material to the procedural question before the Court.

The Court has already rejected Defendants' AI-based discovery theory (ECF No. 94), holding that AI-assisted drafting reflects protected work product and that generative AI tools are "tools, not persons." This ruling has been recognized in subsequent legal commentary as among the first federal decisions addressing the intersection of AI and the work-product doctrine.

Defendants cannot consistently characterize Plaintiff's use of AI-assisted drafting as "untrustworthy" or "rule-defying" while, in other contexts, endorsing the same technology as a legitimate tool for improving legal efficiency.[1] This

inconsistency underscores that Defendants' AI-related arguments are not grounded in a principled legal standard but instead function as a litigation position unrelated to the Rule 72(a) issue before the Court[1].

The Court's prior ruling on this matter stands as a landmark protection for pro se litigants. Defendants' attempt to revisit this issue in ECF No. 116 is a non-responsive effort to relitigate a resolved matter and does not provide any basis to excuse their untimely filing.

The record further reflects that Defendants repeatedly pursued AI-related issues through a second set of discovery requests (ECF No. 61-11), disproportionate deposition questioning (approximately 40% of Plaintiff's deposition, requiring objections due to cumulative inquiry) (ECF Nos. 80-2, 95-3), and an untimely motion to compel filed after the discovery deadline (ECF No. 80), which the Court characterized as "untimely" and a "fishing expedition."

From a practical standpoint, this repeated focus has imposed a disproportionate burden on a pro se litigant to respond to issues already addressed by the Court,

---

[1] See, e.g., *Modern Counsel* (July 31, 2023) (discussing corporate use of AI for legal efficiency), https://modern-counsel.com/2023/brad-stoll-vontier/. See also Ogletree Deakins Press Release (May 7, 2024) (describing the firm's focus on generative AI in legal practice), https://ogletree.com/media-center/press-releases/2024-05-07/ogletree-deakins-deepens-bench-in-detroit-welcomes-richard-warren-as-shareholder/. These public-facing positions reflect recognition of AI as a legitimate professional tool, underscoring the inconsistency of Defendants' contrary position in this litigation.

while diverting attention from the governing procedural requirements and the substance of the case itself. Courts are not abstract systems. They depend on adherence to rules, efficiency, and fairness in litigation conduct.

Defendants offer no evidentiary or technical basis for their accusations that AI-assisted drafting renders filing unreliable. These unsupported assertions do not advance any relevant procedural argument.

Defendants' continued emphasis on Plaintiff's use of drafting tools does not affect the Rule 72(a) analysis or establish excusable neglect under Rule 6(b).

## B. Improper Attempt to Expand Medical Discovery and Eliminate Emotional Distress Claims

Defendants argue that Plaintiff has frustrated discovery and request unrestricted medical authorizations or the striking of emotional distress claims. These arguments are improper for three independent reasons: they exceed the scope of Rule 72(a) review; they seek dispositive sanctions without proper motion practice; and they demand discovery far beyond proportional limits for a garden-variety emotional distress claim. None of these arguments cures the untimeliness of Defendants' filing, and all should be disregarded.

Plaintiff's deposition testimony supports that her emotional distress claim is garden-variety. She testified that she was "scared for my life" and experienced an elevated heart rate in response to workplace harassment (Warner Dep. Tr. 242:15–17; 243:5–6, ECF No. 95-3). These statements reflect transient emotional and

physiological reactions to stress, not a complex or medically managed psychiatric condition.

Consistent with that testimony, Plaintiff sought **no mental health treatment, therapy, counseling, or psychiatric medication during her 15-month employment at Gilbarco.** (Id. at 178:23–25). Her first prescription for anti-anxiety medication was obtained more than 2.5 years after her termination and shortly before her deposition. (Id. at 25:7–15). She was never hospitalized for any mental health condition. (Id. at 179:1–3).

The only medical condition diagnosed during her employment was **hypertension**, a physical, irreversible condition. (ECF No. 108, PageID.1901-1902). Hypertension does not convert a garden-variety emotional distress claim into a severe or complex claim warranting unlimited medical discovery.

Plaintiff's own testimony establishes that her emotional distress claim is limited to ordinary allegations of humiliation, anxiety, and anger, without expert testimony, medical treatment, or diagnosis. Such "garden-variety" allegations do not place a plaintiff's mental condition "in controversy" for purposes of discovery. See *LeGendre v. Monroe Cnty.*, 234 Mich. App. 708, 722; 600 N.W.2d 78 (1999). Federal courts applying Rule 35 have reached the same conclusion, holding that claims for generalized emotional distress, without medical evidence or expert support, do not justify broad or intrusive medical discovery. See *Turner v. Imperial*

*Stores*, 161 F.R.D. 89, 95–97 (S.D. Cal. 1995); *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 554 (N.D. Ga. 2001). On this record, Plaintiff's limited allegations do not warrant an expansive inquiry into her medical or psychological history under Rule 26(b)(1) or Rule 35.

Defendants' current request is untimely and improperly seeks to expand medical discovery after the close of discovery. Discovery closed on December 5, 2025, yet Defendants issued subpoenas seeking expansive medical records on February 18, 2026, 74 days after the discovery cutoff. To the extent Defendants contend their request was previously raised, the operative relief they now seek, unrestricted access to Plaintiff's medical history, was not pursued within the discovery period through proper motion practice. Although the Court acknowledged the untimeliness of Defendants' motion, it nevertheless permitted the discovery based on its "broad authority," without a finding of good cause under Rule 16(b)(4). Rule 16(b)(4), however, requires a showing of diligence, and a party may not use post-deadline motion practice to expand discovery beyond what was timely pursued. Here, Defendants had ample opportunity during the discovery period to seek the relief they now demand, but failed to do so. Their lack of diligence independently precludes the requested expansion of discovery.

Defendants' demand for untimely and unrestricted medical records is disproportionate and should be rejected. Plaintiff has not refused discovery and, in

fact, has already provided HIPAA-compliant authorizations on two occasions, limited to relevant conditions and time periods. Plaintiff remains willing to provide a narrowly tailored, proportional release of medical records consistent with her garden-variety emotional distress claim. Defendants, however, seek access far beyond the scope of any claim or relevant time period, including areas unrelated to Plaintiff's alleged distress, which exceeds the limits of Fed. R. Civ. P. 26(b)(1).

## V. CONCLUSION

Defendants failed to comply with Rule 72(a) by filing their Response seven days after the deadline and did not seek relief under Rule 6(b). Because no showing of excusable neglect has been made, the Response is procedurally improper. Defendants' reliance on collateral arguments, including the "Mirror Defense" described above, does not cure this defect. Accordingly, the Court should strike or disregard Defendants' untimely Response.

**Respectfully submitted,**
/s/ Sohyon Warner
Sohyon Warner, Plaintiff, in Pro Se
2841 Lamplighter Lane
Bloomfield Hills, MI 48304
sohyon.warner@gmail.com
248.210.5504

Dated: April 20, 2026

**CERTIFICATE OF SERVICE**

13

I certify that on April 20, 2026, I filed this Motion with the Court via the CM/ECF system, which will serve all counsel of record electronically.

**Respectfully submitted,**

<u>/s/ Sohyon Warner</u>
Sohyon Warner, Plaintiff, in Pro Se