UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOHYON WARNER,

                    Plaintiff,

vs.

GILBARCO, INC., GILBARCO,INC.    Case No. 24-12333
(d/b/a GILBARCO VEEDER-ROOT)
and VONTIER CORPORATION,

                    Defendants.
_____/

**STATUS CONFERENCE**
**(PROCEEDINGS CONDUCTED VIA ZOOM VIDEOCONFERENCE)**

BEFORE MAGISTRATE JUDGE ANTHONY P. PATTI
United States Magistrate Judge
Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan
Monday, January 12, 2026

APPEARANCES:

For the Plaintiff          SOHYON WARNER
Sohyon Warner:             Plaintiff in Pro Se
                           2841 Lamplighter Lane
                           Bloomfield Hills, Michigan 48304
                           248-210-5504

For the Defendant          RICHARD W. WARREN
Gilbarco, Inc., et al:     Ogletree, Deakins, Nash, Smoak &
                           Stewart, PLLC
                           34977 Woodward Avenue, Suite 300
                           Birmingham, Michigan 48009
                           248-631-3679

     To obtain a certified copy of this transcript, contact:
        Linda M. Cavanagh, CSR-0131, CRR, RMR, RDR, CRC
                   Official Court Reporter
          (313) 234-2616 • www.transcriptorders.com

**TRANSCRIPT PRODUCED FROM DIGITAL VOICE RECORDING**
**TRANSCRIBER NOT PRESENT AT LIVE PROCEEDINGS**

<u>TABLE OF CONTENTS</u>

<u>Page</u>

<u>STATUS CONFERENCE</u>:

Comments by the Court.................................3
Comments by Ms. Warner...............................5
Comments by Mr. Warren...............................6
Further Comments by Ms. Warner.......................9
Further Comments by Mr. Warren.....................12
Further Comments by the Court......................15

<u>EXHIBITS</u>

<u>Identification</u>                          <u>Marked</u>        <u>Received</u>

NONE

Detroit, Michigan

Monday, January 12, 2026

                    —  —  —

(Proceedings commenced at 3:43 p.m., all parties present via Zoom videoconference)

THE CASE MANAGER:  The United States District Court for the Eastern District of Michigan is now in session, the Honorable Anthony P. Patti, United States Magistrate Judge, presiding.

The Court calls Case No. 24-12333, Sohyon Warner versus Gilbarco, Inc., et al.

Counsel, will you please state your appearance for the record beginning with the plaintiff?

MS. WARNER:  Sohyon Warner, pro se.

MR. WARREN:  Good afternoon, Your Honor.  Richard Warren appearing on behalf of defendants.

THE COURT:  Okay.  Afternoon.  And I should -- first of all, I want to acknowledge Caitlin Shrum has done a great job of filling in for us without knowing until a few minutes ago that she had to fill in for us, so thank you for scrambling on our behalf.

THE CASE MANAGER:  Thank you.

THE COURT:  And I have with me Christy Dral, my law clerk.  I think you've met her before but she's not onscreen, she's just here with me now.

So the plaintiff has asked for — Ms. Warner — for a status conference and I granted that motion.  I made clear in my text order there's no promises as to what we can accomplish on such short notice, but I think it's probably a good idea for us to talk at any rate because I know you have an upcoming mediation on January 23rd, and I -- I assume -- everyone's nodding, so -- at least you're nodding -- so that's still happening.

And so let's talk about where the case is now as we go into the -- I know that there are two discovery motions pending, one from each side.  I will say the way to litigate this case is not by discovery motion and motion for sanctions against each other, but it's, you know, to get to it.  On the other hand, we don't always need full discovery to have a successful mediation either.  And so I know you have mediation coming up, and mediation of course is not a time to prove the whole case.  It's to try to -- time to try to resolve a case.

So I also realize that, Ms. Warner, your motion was filed two months ago now, so -- and I -- I was unclear as to whether you were moving forward with it 'cuz you're the counsel, and it was unclear to me that your counsel was limited counsel only for your deposition.  So I was going to ask counsel do they want to pursue this motion or not, then I find out they -- they've withdrawn.  So you're asking for the status conference.  That motion actually was good because it alerted

me to pay attention to this motion again.

And so with that little background, Ms. Warner, what would you like to tell me about where things stand? Hopefully you're going to tell me that some of the things in that motion in the last two months have gotten resolved 'cuz if that's not the case, we're going to be having trouble but I don't want there to be trouble.

MS. WARNER: Okay. Good afternoon, Your Honor. Happy New Year.

THE COURT: Happy New Year.

MS. WARNER: You stand about two months ago and there was a court order issued, ECF 66, end of October. There was some delivery obligation from defendant on November 7th and also 21st. Unfortunately, as of today, I don't think they're fully compliant to that court order. Therefore, we're having this status conference.

THE COURT: Okay. Now, they'll probably disagree, but what I'd like to know is -- when I read your motion to prepare for this today, you know, you basically told me that they weren't compliant in any -- to any part of my order, and so what I'd like to know is as we stand here today, what is still outstanding from that order?

MS. WARNER: Privilege log, factual portion of the HR investigation report, comparator files. I don't think I have full of the file, meaning that if they produced ten files for

my HR files and personnel file, I expect comparators to have that much of a category, ten different files, so I can have a apple-to-apple comparison.  I don't have that.

I do have the ESI production.  It's Bated, I think it's about 5000 Bates.  The problem that I have is it's disorganized.  There's no quantity-per-search item, search terms, no metadata.  It's not organized by either were they custodian [indiscernible].  I don't think there was any text message files.  It was just all emails in PDF form.  So it's -- it's very unorganized and obviously somewhat unusable.

THE COURT:  Okay.  Mr. Warner -- Warren, excuse me.

MR. WARREN:  Sure, Judge.  Thank you.

THE COURT:  It's confusing in this case.  We've got two names that are very similar.

MR. WARREN:  I'll change my name, Judge.

THE COURT:  Okay.

MR. WARREN:  Just to be brief, you know, I really think we have bent over backwards to try and satisfy the discovery requests from the plaintiff here.  And I know this is not coextensive with request to comply with discovery, but we have spent many, many tens of thousands of dollars on all of these motions and all of these notices by a pro se plaintiff.

Putting that aside though, the privilege log has two items on it, the investigate --

THE COURT:  Why does it matter that she's a pro se

plaintiff?

MR. WARREN:  I think the -- the reason why it matters is because we don't have anybody representing her, guiding her on the paths of what the Federal Rules of Civil Procedure require.  And so you have someone who sent in hallucinated cases, who won't provide a privilege log herself, who misquotes the Court's orders.  I would expect none of that to occur with opposing counsel but it is here in this case, and I've found that across the board with pro se plaintiffs.  More and more, pro se --

THE COURT:  No, don't -- don't generalize about all pro se plaintiffs.  Just like all represented parties come in different shapes and sizes and levels of competence, so do pro se individuals.

But I'm not sure how much of a privilege log she could possibly have since she only had counsel for the limited purpose of defending her deposition as far as I know.  But, all right, my question is have you given her a privilege log yet?

MR. WARREN:  Yes, yes, she has had multiple versions of the privilege log.  It is full and complete.  It provides all the necessary information for her to understand why we are asserting the privilege.  It has two items on it.  We have produced every other item that was previously on it to her in the spirit of compromise.  All that's on there is the investigation reports, and we have submitted those with our

response brief, if the Court would like to conduct an in-camera inspection.

THE COURT: So let me just look at that. Were they -- you said you submitted them with a response brief, and I do have the response brief right here, ECF 73. I want to open it. Is it attached?

MR. WARREN: Yes. I think it was submitted in your chambers copy. So the privilege log is PageID.No. 760 on our filing, and then the submissions were Exhibits D and E and those are PageIDs.762 and 763.

THE COURT: Well, I see Exhibits -- they're numbered exhibits. Which exhibit numbers are they?

MR. WARREN: D and E, Your Honor.

THE COURT: Okay. So I think -- let me just open this. I'm not aware of the -- were they delivered to chambers as in camera, for in-camera review?

MR. WARREN: I believe they were, Judge. I'll verify that.

THE COURT: Yeah. I -- I've got to check because I -- I don't -- I'm not aware of seeing those, but I will -- I mean that does make sense probably --

MR. WARREN: We provide --

THE COURT: -- given where you were.

MR. WARREN: I'm sorry.

We provided three things: number one, the full

privilege log for your review; two, both investigation reports; and then also two declarations that explain the nature of the investigation reports.

THE COURT: Okay. Well, obviously that's going to be something I can't resolve in a status conference. But what I'm trying to figure out is with this mediation coming up, it seems like the parties certainly have a lot of information from each other, if not complete information. I realize parties have a dispute as to whether it is complete information right now. And I know that defendant has a motion to compel as well and a request for sanctions, but, you know, I'm not going to get all that resolved before your mediation.

I still think you can have a very successful mediation because very often when we -- we already planned that this mediation would happen in the middle of discovery before discovery's completed, so you shouldn't have had an expectation that you're going to have a complete discovery package on either side going into this.

So very often we also stay discovery pending mediation because it's less time and it's less work and it's less aggravation and it's less expense to get the case resolved than to go through full-blown discovery.

So where do we stand with respect to that, Ms. Warner?

MS. WARNER: Your Honor, back to the privilege log

and investigation report, why this is very important, because defendant has put on their EEOC statement there were investigations and they found nothing, so they're using it as a sword. Now they're not able to give me a factual portion of investigation report. That's what I'm looking for.

THE COURT: Mm-hmm.

MS. WARNER: That I think --

THE COURT: The problem is that I don't -- I don't have -- looked at the in-camera review, so --

MS. WARNER: Okay.

THE COURT: -- I don't know.

But you've both looked at the case that I told you to look at. I know you did 'cuz it's all over your briefs.

MS. WARNER: Yes.

THE COURT: And as you know, the problem is that sometimes when interviews are done by an attorney, everything gets filtered through that attorney's brain when they write down what the answers are with their mental impressions in it. It's not a transcript, it's not an affidavit, it's not right out of the mouth of the witness. It's an attorney's take on it, if you will, right, and that -- that can be a problem. That can -- that can make it the attorney's work product because it's the attorney's summary of something, not a verbatim transcript. I'm not -- I'm not ruling on that right now. I'm just -- but you understand that issue, right, Ms.

Warner?

MS. WARNER:  Yes, I understand, but I did argue that there were internal counsel and acted as an investigating person.  That's what that is on their job title along with the Vontier email address.

And I understand I think was the defendant has argued because they were doing it in -- in -- in a -- expecting some sort of litigation, but that happened in October to December of 2022.  Actual lawsuit was filed not till September 2024, two years later.

So there was -- and also in the EFC statement stage, there was an independent investigation report.  That is the stage of the investigation, independent.  So it implies that they have worked independent.  And the factual statement for my colleague who used to work there, they did tell me that they interviewed her and that she provided 38-pager of her statement in writing to them.  That's obviously a factual document of some sort.  So I'm thinking there got to be some portion remaining truly factual and some are opinion.  I would like to access that factual portion 'cuz --

THE COURT:  I understand.

MS. WARNER:  Yeah.

THE COURT:  I understand, and you apparently understand the distinction.  You're -- you're saying it very well.  You're right.  And you both have read the *EUSA* case.  If

a witness gave a statement that they signed, it's in their own words, that's different than something that was said to an attorney and then filtered through the attorney's brain as a summary of what the person said. But I've got to -- I've got to sort through that to -- to tell that.

I'm not -- my case manager, as you know, Ms. Hicks, who both of you know, is not here today, so I'm going to have to ask her when she's back --

MS. WARNER: Okay.

THE COURT: -- if she's aware of the in-camera documents that have been presented to me. I'm not really a fan of going through the -- the entire privilege log if it's lengthy, but it sounds like it isn't, Mr. Warren. It sounds like the only things you're withholding on the basis of privilege is the report.

MR. WARREN: Correct, Your Honor.

THE COURT: The reports. So we'll get to the bottom of that. And I'll have Ms. Hicks reach out to Mr. Warren, if we don't have those, to get them sent to us again. I don't know but I haven't seen them.

MR. WARREN: And, Judge, I'll verify that they were sent. If I find out they were not sent, I will have them sent over without Cathy having to reach out.

But I -- is it okay if I address from a practical sense the status of discovery as we head into mediation?

THE COURT:  Yes, that's what I'd like you to do.

MR. WARREN:  Great.  So I -- I did read *EUS* -- *EUSA*, and one of the things we said to Ms. Warner is we are withholding the documents as privileged.  However, we will make every single person that the investigator spoke to available for your deposition to the extent that there are employees, and if they are not, we will facilitate your reaching out to them to get them subpoenaed.

Discovery is currently closed.  I did reach out to Ms. Warner prior to the closure and I asked her if she would agree to extend discovery so depositions could be completed, and Ms. Warner declined to extend discovery.  So currently we are beyond the discovery cutoff and headed towards dispositive motion.

THE COURT:  Okay.  I didn't think discovery was closed but let's look here.

MS. WARNER:  December 5th, Your Honor.

THE COURT:  I see.  Okay.

MS. WARNER:  Also just want to add on to here, I did spell out back in August to September who I want to deposition, so I -- it's on record that I want to deposition HR personnel and HR compliance personnel, and that -- that is reason that I need to get that investigation so I can deposition them, which I was not able to.

THE COURT:  So what you're saying is you didn't take

their depositions 'cuz you need the documents to take the depositions?

MS. WARNER: Yeah, basically.

THE COURT: Okay. I note, Mr. Warren, your -- your motion to compel -- I know I'm jumping around a bit, but your motion to compel and request for sanctions is dated December 23rd, 2025. When was -- when was Ms. Warner's deposition taken?

MR. WARREN: Late November.

MS. WARNER: November 25th, my son's birthday, I recall.

THE COURT: Okay. And normally we don't accept a motion to compel discovery after the close of discovery. Mr. Warren, why should I accept this motion?

MR. WARREN: Because I did not learn of the basis for filing it until I took Ms. Warner's deposition. During the deposition I asked her a number of questions about her usage of artificial intelligence tools to examine the documents in this case, about her queries into generative AI and the responses back because those would contain admissions that could be utilized against her.

I also wanted to know what documents of ours she had uploaded to generative AI tools, and she responded by indicating she would not provide any of those. She asserted the attorney/client privilege as a pro se plaintiff and the

work product doctrine and objected in writing.  And only during the deposition did I get a sense as to how much she had utilized generative AI.  So we attempted to meet and confer with her, she declined to do so, and that's why we filed the motion when we did.

THE COURT:  And you're saying that that's in violation of my order about not uploading onto AI?

MR. WARREN:  No, Judge, I don't have any indication suggesting that she violated your order.

THE COURT:  So what's -- again, I haven't read this motion.  What's the point of that?

MR. WARREN:  The -- the point of the motion is she can't assert the attorney/client privilege and doesn't have work product doctrine if she is attempting to assert those to statements that she sent or documents that she sent to a third party.

MS. WARNER:  Your Honor?

THE COURT:  Yes.

MS. WARNER:  I never claimed attorney/client privilege.  What I claimed was opinion work product using a software tool that is cloud based and I use that as a drafting tool, so those are my prompt, those are my thought process, and the final product is in the docket and --

THE COURT:  Well, I don't know if your thought process is privilege or not.  As an attorney, I've never had

the issue come up.  That's a very interesting question.

I -- I'm going to withhold judgment on whether I'm going to accept this motion after the close of discovery because if you read the guidelines, normally we don't.  But I understand that the deposition was taken late and that you had to get a transcript to file this motion so I'll withhold judgment on that, but that's already set for hearing.

And there's no way I can rule on Ms. Warner's motion sitting here today, but I don't know why you can't -- I mean you should just go forward with your mediation.  Hopefully you'll resolve this case.  I really hope you do.  I really hope people show up in good faith.  And, again, stop trying to litigate by motion to compel and sanction and instead try to figure out what's a solution to this case from a practical standpoint for both of you in -- in a way that comes out with a win-win, that you're done with this litigation, and you have that opportunity right now and you've got it with most discovery done, quite frankly.

MS. WARNER:  I agree with you.

THE COURT:  Whether I'm going to allow any further discovery, that's an issue because no one has moved to reopen discovery, no one has moved to extend discovery, so that's a chance that both parties took moving forward.  But I also note that Ms. Warner had a motion to compel discovery that was filed within a discovery period, so we'll see what that says.  But,

you know, if I allow more discovery, it's going to be very specific and very circumscribed.  It's going to be you can do this, this, this and this, if I allow it at all.

I think it's not a bad place for the both of you to be going into mediation with some uncertainty — uncertainty as to whether I'm going to accept Mr. Warren's motion, uncertainty as to whether I'm going to allow any more discovery, uncertainty as to whether I'm going to order any more discovery, or whether I'm going to grant or deny either motion. I know that that uncertainty is a bad thing because you're both kind of at the receiving end of some potential problems here based upon what's happened in discovery, and you're both potentially going to gain as well something that the other one doesn't want you to have.  But I can't possibly sort through all this and make definitive rulings on that now.

What I'll do is I will set Ms. Warner's motion for a hearing in person the same times I set the other one, which is February 5th, so that's coming up.  By then you're done with your mediation or you've had day one of your mediation.  Maybe you -- you go on to a second day.  If you're making -- if you've settled, obviously let us know right away so we get this off the docket.

If you have not settled but you're making progress and moving on in the mediation, I'd rather keep that process going for a lot of reasons.  One is I think that you're in a

good place to be having that discussion while there is this uncertainty. But also, quite frankly, the Court doesn't want to roll up its sleeves and do all this work to sort through all this discovery for a case that's about to settle. Okay. So I need you to keep me up to date without saying specifically -- I don't want anything on the record that says someone offered this and someone rejected that. I don't want specific numbers. I just want to know what happened: is the mediation done, successful, ongoing, where do we stand? Does that make sense?

MR. WARREN: Makes sense to me, Your Honor.

MS. WARNER: Yes.

THE COURT: Okay. And -- and I want you both as you go into this settlement conference or the mediation, I want you to think, just like I would tell you if you were here for a settlement conference, about the risks of going forward 'cuz there are risks. There are risks of adverse rulings, not just on the motions that are pending before me now but going forward on the merits, on motions for summary judgment, and if it survives summary judgment, on trial. And there's a lot of -- a lot of expense and aggravation involved with this litigation. Maybe not as much expense for you, Ms. Warner, but surely some aggravation and --

MS. WARNER: My personal time.

THE COURT: Yeah, time -- time is money, right? And so I want you both to think about that because if this case

doesn't settle in mediation, it's going to just continue to sort of have a life of its own, and given the way it's litigated so far, I predict that it's going to be a lot more aggravation and a lot more expense for both sides and that doesn't seem like a really good outcome. So I think you could be a win-win with a settlement and you can be a lose-lose without one. I'm here to do what I have to do but I don't want to do it unnecessarily.

So anything further I could do at this time?

MS. WARNER: You gonna let us know about the camera view situation?

THE COURT: Yeah, I -- I will -- I will simply -- I will simply have my case manager reach out to Mr. Warren if she doesn't have those documents to say we don't have them, send them again, that's it.

MS. WARNER: So I will not get a input from you on the camera review on what you viewed?

THE COURT: She -- she can -- she can -- she could -- 'cuz you're -- you've emailed with Ms. Hicks, haven't you?

MS. WARNER: Yes, I do, yeah.

THE COURT: Okay. So I'll have her do it by email and copy you so you know exactly what's being said, and it's just going to be we have the documents or we don't. If we don't, deliver them again, 'cuz in-camera review, if I have to -- if I have to roll up my sleeves and have that hearing on

Case 2:24-cv-12333-GAD-APP   ECF No. 117-1, PageID.2448   Filed 04/20/26   Page 20 of 21
Status Conference • Monday, January 12, 2026

20

the 5th, I will have wanted to have looked at those documents in camera.

I also, by the way, can't promise you, 'cuz there's a lot of paper in front of me here and you're making a lot of accusations at each other, I can't promise you that I'm going to give you a ruling from the bench.  I would like to rule from the bench, but bear in mind we could have that hearing on March [sic] 5th and you could still be waiting for an opinion 'cuz I gotta sort through it and write a written opinion.  I'm hoping that's not the case.  I'd rather rule from the bench.  But, you know, bear that in mind too as you go into your mediation too, okay?

MS. WARNER:  Will do.

THE COURT:  Okay.  Anything further, Ms. -- Ms. Warner?

MS. WARNER:  No, I'm all set.

THE COURT:  Okay.  Mr. Warren?

MR. WARREN:  Nothing further.  Thank you for your time, Your Honor.

THE COURT:  All right.  Thank you.

All right.  Thank you very much, Ms. Shrum.

THE CASE MANAGER:  Thank you.

MR. WARREN:  Take care.

MS. WARNER:  Thank you.  Bye-bye.

(Court in recess at 4:08 p.m.)

C E R T I F I C A T I O N

I, Linda M. Cavanagh, Official Court Reporter for the United States District Court, Eastern District of Michigan, do hereby certify that the foregoing pages 1 through 20 comprise a full, true and correct transcription, to the best of my ability, of the Zoom videoconference recording taken in the matter of Sohyon Warner vs. Gilbarco, Inc., et al., Case No. 24-12333, on Monday, January 12, 2026.


                    s/Linda M. Cavanagh
                    Linda M. Cavanagh, CRR, RMR, RDR, CRC
                    Federal Official Court Reporter
                    United States District Court
                    Eastern District of Michigan



Date: February 2, 2026
Detroit, Michigan